EMIDIO DiLORETO *vs.* FIREMAN'S FUND INSURANCE COMPANY
& another.[1]

Suffolk. December 2, 1980. — March 31, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Constitutional Law,* Delegation of powers. *Due Process of Law,* Presumption. *Evidence,* Presumptions and burden of proof. *Motor Vehicle,* Insurance. *Insurance,* Motor vehicle insurance.

The delegation of authority by G. L. c. 175, § 113P, to a private insurance company to assess a surcharge on a policy of motor vehicle insurance under certain circumstances does not violate art. 30 of the Massachusetts Declaration of Rights or Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. [245-248]

The presumption established by the Board of Appeal on Motor Vehicle Liability Policies and Bonds in 211 Code Mass. Regs. 74.04 (18) (1978) that the operator of a motor vehicle involved in a collision resulting from the vehicle's door being opened, opening, or closing is at fault in excess of fifty per cent does not violate an insured's right to due process of law. [248-249]

CIVIL ACTION commenced in the Superior Court Department on April 19, 1979.

The case was heard by *Morse,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Elizabeth A. DiLoreto* for the plaintiff.

*Michael Broad,* Assistant Attorney General, for Board of Appeal on Motor Vehicle Liability Policies and Bonds.

HENNESSEY, C.J. The plaintiff challenges the "merit rating" provisions of G. L. c. 175, § 113P, and the regulations promulgated thereunder. He contends that: (1) G. L.

---

[1] The Board of Appeal on Motor Vehicle Liability Policies and Bonds.

c. 175, § 113P, unconstitutionally delegates authority to a private insurance company in violation of art. 30 of the Declaration of Rights and of Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution; and (2) 211 Code Mass. Regs. 74.04 (18) (1978) violates due process in that it establishes a presumption that is not reasonable in tending to prove the fact in question. We conclude that (1) the plaintiff has failed to support his contention that the delegation of authority to the insurer is improper, and (2) the presumption established by the Board of Appeal on Motor Vehicle Liability Policies and Bonds (board) in 211 Code Mass. Regs. 74.04 (18) (1978) afford adequate protection to the insured's due process rights.

The parties agreed to the following facts. On or about May 18, 1978, Emidio DiLoreto parked his motor vehicle on the right-hand side of Derne Street in Boston. It was raining and the road conditions were wet. He opened the left front door of his motor vehicle in order to alight therefrom. After opening the door and placing his left foot out of the door, the plaintiff saw a motor vehicle being operated at an unsafe speed heading toward the opened door. DiLoreto estimated the speed of this vehicle to be thirty miles an hour. He observed that the driver of the motor vehicle was not paying attention to her driving, but instead was talking to a passenger. After observing the approaching vehicle, DiLoreto pulled his leg back into his motor vehicle. The approaching vehicle then struck DiLoreto's opened door.

Because of this accident DiLoreto's insurer,[2] the Fireman's Fund Insurance Company (Fireman's Fund) notified him that he was to be surcharged pursuant to G. L. c. 175, § 113P, and 211 Code Mass. Regs. 74.04 (18) (1978).[3] Di-

---

[2] It does not appear in the record whether DiLoreto's insurance policy provided collision, limited collision or property damage coverage.

[3] Title 211 Code Mass. Regs. 74.04 (1978) describes situations in which fault is presumed to be in excess of fifty per cent. The provision under which DiLoreto was determined to be surchargeable is 74.04 (18): *"Vehicle Doors Opened, Opening, or Closing.* An operator of a vehicle subject to

Loreto filed a timely appeal of this determination, and a hearing was held by a hearing officer for the board. DiLoreto testified to the facts agreed to above. The operator of the motor vehicle which struck DiLoreto's door was not present at the hearing nor was any evidence submitted by counsel for Fireman's Fund, who was present at the hearing. On March 21, 1979, the board upheld the merit rating surcharge.

Within the time limits prescribed by G. L. c. 175, § 113P, DiLoreto filed a petition for review in the Superior Court. After a hearing, the judge found that there were no errors of law and that the finding of the board was supported by substantial evidence. Judgment was entered affirming the decision of the board. The board subsequently filed a motion to intervene, which was allowed. DiLoreto then appealed from the judgment affirming the board's findings, and we transferred the case here on our own motion.

1. *The Delegation of Authority to the Insurer.*

It is argued that the delegation of authority to a private insurance company to assess a surcharge violates art. 30 of the Declaration of Rights and Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. General Laws c. 175, § 113P, makes clear that insurers have been delegated the power to assess a surcharge when the insurer determines that the insured was at fault in excess of fifty per cent. No party challenges the delegation of authority to the board in G. L. c. 175, § 113P. Rather, it is the delegation to the insurer with which we are concerned.

"It is well established in this Commonwealth and elsewhere, that the Legislature cannot delegate the general power to make laws, conferred upon it by a constitution like that of Massachusetts." *Brodbine* v. *Revere,* 182 Mass. 598, 600 (1903). *Opinion of the Justices,* 328 Mass. 674, 675 (1952). *Opinion of the Justices,* 302 Mass. 605, 614 (1939). See 1 K.C. Davis, Administrative Law § 2.02 (1958). Del-

merit rating whose door or doors are opened, opening, or closing, thereby resulting in a collision shall be presumed to be at fault in excess of 50 % ."

egation of legislative power to private parties has sometimes been held to violate the due process clause of the Fourteenth Amendment to the Constitution of the United States. *Carter* v. *Carter Coal Co.*, 298 U.S. 238, 311 (1936), *Washington ex rel. Seattle Title Trust Co.* v. *Roberge*, 278 U.S. 116, 121-123 (1928). *Eubank* v. *Richmond*, 226 U.S. 137, 143-144 (1912). Cf. *Thomas Cusack Co.* v. *Chicago*, 242 U.S. 526, 531 (1917); *St. Louis Iron Mountain & So. Ry.* v. *Taylor*, 210 U.S. 281, 287 (1908); *Butte City Water Co.* v. *Baker*, 196 U.S. 119, 127 (1905).

One of the exceptions to or qualifications of the nondelegation doctrine is that "the Legislature may delegate to a board or an individual officer the working out of the details of a policy adopted by the Legislature." *Commonwealth* v. *Hudson*, 315 Mass. 335, 341 (1943). See *Opinion of the Justices*, 330 Mass. 713, 719 (1953). The Legislature may likewise delegate authority to a private person in order that he may fulfil duties which are public in nature, see *Attorney Gen.* v. *Drohan*, 169 Mass. 534 (1897), and delegations to private persons are permissible even when no public duties necessitate such a delegation, so long as proper safeguards are provided. *Corning Glass Works* v. *Ann & Hope, Inc.*, 363 Mass. 409, 420-424 (1973). See *Arlington* v. *Board of Conciliation & Arbitration*, 370 Mass. 769, 777 (1976); Liebmann, Delegation to Private Parties in American Constitutional Law, 50 Ind. L.J. 650, 717-718 (1975).

In many respects the merit rating program under consideration here implements those safeguards the lack of which concerned us in *Corning Glass*. The statutory scheme in *Corning Glass* failed to provide for participation by any public board or officer in the development or implementation of crucial aspects of the program, lacked any policy or standard to guide the activities of the private parties to whom the power was delegated, and made no provision for judicial review of determinations made by the private party. *Corning Glass, supra* at 423. In contrast, the merit rating program is based on a detailed and comprehensive plan established by the board pursuant to statu-

tory mandate, G. L. c. 175, § 113P; the determination to be made by the insurer is a narrow one and is channeled by the regulations of the board, 211 Code Mass. Regs. 74.00 (1978) and 79.00 (1979); the determination of the insurer is in all instances reviewable by the board, 211 Code Mass. Regs. 88.00 (1978); and the decisions of the board are subject to judicial review, G. L. c. 175, § 113P.

DiLoreto challenges the impartiality of Fireman's Fund, claiming that the insurer has a "private and proprietary interest" in the imposition of the surcharge. The sole ground offered by DiLoreto in support of his claim of bias is that the insurer is subject to the serious penalties prescribed in G. L. c. 175E, § 12, if it fails to impose a surcharge known to be due. G. L. c. 175, § 113P. The reasoning appears to be that since Fireman's Fund is penalized for erroneously failing to surcharge, but not penalized for erroneously surcharging, then naturally Fireman's Fund will minimize its risk by surcharging in doubtful cases. The purpose of this statutory penalty, however, is quite clear. It was intended to counteract the natural tendency of the insurer to *fail* to assess surcharges against its policyholders in order to avoid animus where the insurer has nothing to gain. The penalties for failure to assess a surcharge "known to be due" extend to only those cases where there is no doubt that an insured was surchargeable but was intentionally not assessed. The possibility that these penalties would give rise to a bias against the insured is exceptionally remote. Cf. *Marshall* v. *Jerrico, Inc.*, 446 U.S. 238, 243-244 (1980).

DiLoreto makes no claim that the insurer directly benefits by surcharging him. It is clear from G. L. c. 175, § 113P, that insurers must give good-driver credits in an amount sufficient to balance the surcharges collected. Even investment income earned on the surcharge funds (held by the insurer prior to redistribution) must be considered in calculating good-driver credits. Thus insurers function merely as a conduit in the statutory redistribution plan. None of the arguments advanced by DiLoreto persuades us that the imposition of a surcharge creates a net gain for

Fireman's Fund or that the merit rating plan is otherwise defective because of bias on the part of the insurer.

2. *The Presumption Set Forth in 211 Code Mass. Regs. 74.04 (18) (1978).*

Finally, we are urged to hold that 211 Code Mass. Regs. 74.04 (18) (1978)[4] violates due process in that it establishes a presumption which is not, according to general experience, reasonable in tending to prove the fact in question. It is claimed that the fact that a collision results from a vehicle's door or doors being opened, opening, or closing, does not tend to establish that the operator of the vehicle was more than fifty per cent at fault.

The controlling rule respecting the establishment of such presumptions is comprehensively stated in *Mobile, Jackson & Kan. City R.R.* v. *Turnipseed,* 219 U.S. 35, 42-43 (1910): "Legislation providing that proof of one fact shall constitute *prima facie* evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government.   Statutes, National and state, dealing with such methods of proof in both civil and criminal cases abound, and the decisions upholding them are numerous. . . . That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be *so* unreasonable *as* to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed."

The challenged presumption satisfies these requirements. The presumption is rebuttable.   211 Code Mass. Regs. 74.03 (1978).   There is a rational connection between an accident caused, at least in part, by the open door of a vehicle and the assignment of more than fifty per cent of the fault to

[4] See note 3, *supra.*

the operator of that vehicle. While we can imagine many such accidents in which the operator would not be chargeable with any fault whatsoever, there are likewise many other situations where the fault would be solely that of the operator. It is permissible for the board to determine which type of situation arises with greater frequency and to embody this determination in its evidentiary rules. We recognize as well that the board has some expertise in the determination of relative degrees of fault in motor vehicle accidents, and that it may use such expertise in establishing presumptions "to serve sound social and economic policy through this method of controlling some of the procedural incidents of proof making." K.B. Hughes, Evidence § 42, at 48 (1961). We conclude that use of the presumption does not violate due process.[5]

*Judgment affirmed.*

---

[5] Since we uphold the use of the presumption, we disagree with DiLoreto's contention that the board's decision was not supported by substantial evidence.