CONSTRUCTION INDUSTRIES OF MASSACHUSETTS & others[1]
*vs.* COMMISSIONER OF LABOR AND INDUSTRIES.

Worcester. October 4, 1989. - November 22, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Public Works*, Wage determination. *Practice, Civil*, Declaratory proceed-
ing. *Jurisdiction*, Declaratory relief. *Statute*, Construction. *Administra-
tive Law*, Exhaustion of remedies, Regulations, Wage determination.
*Regulation. Constitutional Law*, Separation of powers.

In an action challenging the authority of the Commissioner of Labor and
Industries under G. L. c. 149, §§ 26 & 27, to set hourly wages of truck
drivers who deliver bituminous concrete to public works construction
sites, this court determined that declaratory relief was appropriate not-
withstanding the plaintiffs' failure to avail themselves of the adminis-
trative review procedure afforded by G. L. c. 149, § 27A, where the
question presented was one of a statutory interpretation and had been
fully argued; where the commissioner conceded that resort to adminis-
trative remedies would be futile; and where resolution of the issue was
in the public interest. [166-167]
The authority of the Commissioner of Labor and Industries to set wage
rates under G. L. c. 149, §§ 26 & 27, for "mechanics and apprentices,
teamsters, chauffeurs and laborers" employed on public works encom-
passes the power to set wages for teamsters who haul bituminous con-
crete to public works projects and then aid in its installation. [167-169]
Determinations by the Commissioner of Labor and Industries pursuant to
G. L. c. 149, § 27, setting wage rates for each public works project are
not "regulations" under § 1 (5) of G. L. c. 30A, the State Administra-
tive Procedure Act. [170-171]
In the statutory scheme under which the Commissioner of Labor and In-
dustries fixes wage rates for workers employed on public works projects,
the Legislature did not unconstitutionally delegate legislative power to
private parties by language providing, in G. L. c. 149, § 26, that the
rates so fixed shall not be less than the rates established in "collective

[1]Massachusetts Asphalt Paving Contractors Association, J. R. Philie, J.
E. Boucher, and Lecca Trucking, Inc. Centre Trucking Services, Inc., was
a party below but does not join in the appeal.

agreements or understandings in the private construction industry between organized labor and employers." [171-173]


CIVIL ACTION commenced in the Superior Court Department on August 14, 1986.

The case was heard by *James F. McHugh, III,* J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*John D. O'Reilly, III,* for the plaintiffs.

*Suzanne E. Durrell,* Assistant Attorney General, for the Commissioner of Labor and Industries.

*Paul F. Kelly,* for Excavating & Building Material Teamsters, Chauffeurs & Helpers, Local Union 379, amicus curiae, submitted a brief.

*Donald J. Siegel & Mary T. Sullivan,* for Massachusetts Building Trades Council, amicus curiae, submitted a brief.

NOLAN, J. Plaintiffs, two trade associations and four truck owners, commenced this action in the Superior Court against the Commissioner of Labor and Industries (commissioner). The plaintiffs sought a judgment declaring that the commissioner does not have authority under G. L. c. 149, §§ 26-27F (1988 ed.), to set wages for truck drivers who deliver bituminous concrete to public works construction sites. A Superior Court judge entered summary judgment declaring that the statute was constitutional, but the judge declined to determine the extent of the commissioner's authority under the statute. The plaintiffs appealed and we granted their application for direct appellate review. We modify the judgment of the Superior Court and, as modified, affirm.

The essential facts are not in dispute. Bituminous concrete is a mixture of sand and stone held together by a very heavy crude oil which acts as a glue. Bituminous concrete is often referred to as asphalt. It ranges from coarse to fine depending on the size of the stone used in its manufacture. Several layers of bituminous concrete are used in the construction of roads and highways. These range from a very coarse consis-

tency in the lower levels to a fine layer on top. Sometimes an old road surface is ripped up, transported to the manufacturing plant, reprocessed, and then reapplied at the site.

The manufacture of bituminous concrete takes place at either a stationary plant, from which it is then transported to the construction site or, in some cases, at portable on-site plants. In either case, the bituminous concrete is hauled by truck from the site of manufacture to the location where it is laid down. The role of the truck driver is the same whether the bituminous concrete is manufactured on the site or at a stationary plant. After loading the truck, the driver proceeds to the application site. The driver then backs the truck up to a device called a spreader and dumps the concrete into the spreader's hopper. The spreader is used to lay the concrete down evenly. A "roller" follows the spreader and compacts the layer of bituminous concrete.

It usually takes several "lifts" to empty a truck. After dumping the first load into the spreader, the driver pulls the truck forward and waits for the spreader to empty out. Sometimes the spreader simply pushes the truck forward as it lays down the bituminous concrete.[2] The truck driver continues to dump concrete into the spreader until his truck is empty. He then leaves the site, fills the truck again, returns to the site, and repeats the entire process. During the dumping and spreading procedure, the truck driver takes directions from the spreader operator and the foreman. It takes from five to fifteen minutes to complete the process and empty the truck.

Under G. L. c. 149, §§ 26 and 27, the commissioner is required to set the hourly wage which must be paid to "mechanics and apprentices, teamsters, chauffeurs and laborers" employed on public works. Since at least 1976, the commissioner has considered those truckers who haul bituminous concrete to the site of public works projects and aid in the

---

[2]Under an older system, which is not frequently used anymore, the spreader was chained to the truck and the truck would then pull the spreader forward as the spreader laid down the bituminous concrete.

application of that concrete, to be teamsters employed on those sites. Nevertheless, between 1976 and 1986, the commissioner rarely resorted to criminal enforcement of the wage rates for bituminous concrete truck drivers.

In 1986, the commissioner caused a criminal complaint to issue against the plaintiff Lecca Trucking, Inc., alleging a failure to pay the posted wage rate to truckers hauling bituminous concrete to a public works project. The commissioner filed applications for show cause orders against the plaintiffs J.R. Philie and J.E. Boucher for failure to produce the payroll records of truck drivers transporting bituminous concrete to a public works project. The plaintiffs Construction Industries of Massachusetts and the Massachusetts Asphalt Paving Contractors Association are nonprofit corporations which represent contractors involved in the manufacture, transportation, and installation of bituminous concrete. Collectively, the plaintiffs filed suit in Superior Court seeking to enjoin the pending and threatened criminal prosecutions. The plaintiffs also sought a judgment declaring that the commissioner had no authority to set wages for truck drivers transporting bituminous concrete and, if the commissioner did have such authority, that the statute giving him the authority was unconstitutional as an unlawful delegation of legislative power. The plaintiffs also argued that by setting the posted wage rates, the commissioner adopted a "regulation" within the meaning of G. L. c. 30A, § 2 (1988 ed.), and that, due to the absence of a public hearing, the posted wage rates were invalid.

The Superior Court entered a temporary restraining order, and later a preliminary injunction, enjoining the criminal proceedings against the plaintiffs. The parties then entered into a statement of agreed facts and made cross-motions for summary judgment. The judge entered a judgment declaring that G. L. c. 149, §§ 27 and 27F, did not constitute an unlawful delegation of legislative power and that the commissioner's adoption of the wage rates was not the promulgation of a regulation requiring observance of the procedures described in G. L. c. 30A. The judge declined, however, to de-

termine whether the commissioner had authority to set the wages for truckers hauling bituminous concrete because plaintiffs had not availed themselves of the administrative review procedure created by G. L. c. 149, § 27A. Finally, the judge vacated his preliminary order granting injunctive relief to the plaintiffs.

1. *Procedural adequacy of this appeal.* General Laws c. 149, § 27A, provides an administrative mechanism for review of wage determination and classification of employment by the commissioner.[3] None of the plaintiffs in this case availed itself of that process. Instead, the plaintiffs awaited the filing of criminal charges and then brought an action for declaratory and injunctive relief. The judge concluded that an administrative appeal pursuant to § 27A was the appropriate vehicle for review of the commissioner's decision that bituminous concrete truck drivers were "teamsters" within the meaning of G. L. c. 149, §§ 26 and 27. Thus, the judge declined to enter a declaratory judgment.

Generally, this court will decline to reach the merits of a case when an aggrieved party does not utilize the administrative procedures available to him. See *Assuncao's Case*, 372 Mass. 6, 8-10 (1977). While the declaratory judgment statute was meant to create a procedure for the resolution of controversies, "[a] proceeding for declaratory relief in itself does not operate to suspend the ordinary requirement that a plaintiff exhaust his administrative remedies before seeking judicial relief." *East Chop Tennis Club* v. *Massachusetts*

---

[3]G. L. c. 149, § 27A provides: "Within five days from the date of the first advertisement or call for bids, two or more employers of labor, or two or more members of a labor organization, or the awarding officer or official, or five or more residents of the town or towns where the public works are to be constructed, may appeal to the commissioner or his designee from a wage determination, or a classification of employment as made by the commissioner, by serving on the commissioner a written notice to that effect. Thereupon the commissioner or his designee shall immediately hold a public hearing on the action appealed from. The commissioner or his designee shall render his decision not later than three days after the closing of the hearing. The decision of the commissioner or his designee shall be final and notice thereof shall be given forthwith to the awarding official or public body."

*Comm'n Against Discrimination*, 364 Mass. 444, 450 (1973). In this case, the parties urge us to reach the merits. The issues have been fully briefed and argued. The commissioner concedes that a § 27A appeal would be futile. Since the parties have entered into an extensive stipulation of facts, we are presented with a question of statutory interpretation. Moreover, the plaintiffs are essentially challenging the authority of the commissioner under the enabling statute and the resolution of this issue is in the public interest. We conclude that declaratory relief is appropriate. See *Ciszewski* v. *Industrial Accident Bd.*, 367 Mass. 135, 141 (1975) (exhaustion of administrative remedies not required when controversy centers around authority and power of agency); *Belfer* v. *Building Comm'r of Boston*, 363 Mass. 439, 442 (1973) (declaratory relief appropriate where resort to administrative remedy is futile).

2. *Authority of the commissioner.* General Laws c. 149, §§ 26-27F, comprise a comprehensive legislative enactment which, inter alia, regulates the minimum wages of certain employees who are engaged in the construction of public works. The commissioner, under § 27, is required to prepare a list of the jobs usually performed on public works projects and, when requested, to assign to each job the minimum wage which must be paid to persons performing that job. The commissioner contends that truck drivers who transport bituminous concrete to public works projects are "teamsters" employed on those projects. We agree.

It is beyond dispute that the truck drivers at issue are "teamsters." Section 26 of the statute requires, however, that those teamsters be employed "*in the construction* of public works" and "*on* said works" (emphasis supplied). Section 27 makes reference to "jobs . . . *on* various types of public works *upon which* . . . teamsters . . . are employed" (emphasis supplied). Section 27B provides that employers "*engaged in* . . . public works" must maintain records of teamsters "employed *thereon*" (emphasis supplied). When a statute is clear and unambiguous, the plain meaning of the language must be given effect. *Telesetsky* v. *Wight*, 395 Mass. 868, 872

(1985). Quite clearly, the commissioner has not been given authority to set wages for all teamsters who have any connection with a public works project. The language of the statute limits his authority. The focus of that limitation is twofold. First, the statutory language makes repeated reference to the work site itself. This is the plain meaning of the language "on" and "upon" which appears in the statute. Second, the nature of the work performed on the site is an important aspect of the statute. This is evident from the use of phrases such as "in the construction" and "engaged in." Thus, the limits of the commissioner's authority to set wages under G. L. c. 149, §§ 26 and 27, are governed by the physical locus of the work site itself and the work which is performed there. The commissioner is empowered to set wages for teamsters when there is a significant nexus between the work those teamsters perform and the site of the construction project. In simple terms, the commissioner must ask, "What do they do at the site?" When the performance of a statutorily specified job has a significant connection with the construction project, then that job falls within the domain of the posted wage statute. This is the plain meaning of the statute. We have no need to resort to extrinsic aids. *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984).

In this case we have no problem concluding that the commissioner acted within the confines of the statute. The bituminous concrete truck drivers are an integral part of the road construction process. Not only do they spend a great deal of time at the site, but they work with the road crew to spread the bituminous concrete. The truck drivers cooperate with the workers at the site in applying the concrete to the road surface. Their activities are an essential part of the work done at the site. In our view, the truck drivers are more than just "materialmen."

Plaintiffs' entire argument is premised upon the assumption that the posted wage laws do not apply to "materialmen," and that plaintiffs are materialmen. Plaintiffs point to

the 1973 amendment to § 27.[4] There, they contend, the Legislature acknowledged that material suppliers are not covered by the statute and, furthermore, that the Legislature specifically included suppliers of gravel or fill, to the exclusion of suppliers of bituminous concrete. It is true generally that "a statutory expression of one thing is an implied exclusion of other things omitted from the statute." *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975). Expressio unius est exclusio alterius. See 2A C.Sands, Sutherland Statutory Construction § 47.23, at 194 (4th ed. 1984). We need not address whether this general rule applies in this case since we think the plaintiffs' fundamental assumption that they are mere materialmen is mistaken. The teamsters employed by the plaintiffs do more than deliver bituminous concrete to the work site. They perform an essential part of work which the public works contract demands. Cf. *Holt & Bugbee Co.* v. *Melrose*, 311 Mass. 424, 426 (1942) (comparing materialman and subcontractor under a performance bond statute). The commissioner's authority to set wage rates under G. L. c. 149, §§ 26 and 27, clearly encompasses the power to set wages for the teamsters employed by the plaintiffs who haul bituminous concrete to public works projects and then aid in its installation.[5]

---

[4]Statute 1973, c. 625, § 2, added the following provision to G. L. c. 149, § 27: "Said rates shall apply to all persons engaged in transporting gravel or fill to the site of said public works or removing gravel or fill from such site, regardless of whether such persons are employed by a contractor or subcontractor or are independent contractors or owner-operators."

[5]The plaintiffs argue that we should construe the language of §§ 26 and 27 very narrowly, since they are penal statutes. Thus, plaintiffs contend that we should interpret these provisions so that they do not apply to drivers who haul bituminous concrete to the site. "The maxim that penal statutes should be strictly construed 'is a guide for resolving ambiguity, rather than a rigid requirement that we interpret each statute in the manner most favorable to defendants.'" *Edgartown* v. *State Ethics Comm'n*, 391 Mass. 83, 89-90 (1984), quoting *Simon* v. *Solomon*, 385 Mass. 91, 102-103 (1982). General Laws c. 149, §§ 26 and 27, are not ambiguous. The plain requirement of these provisions is that the commissioner set wage rates for teamsters (among others) whose work has a significant connection with the

3. *"Regulation" under G. L. c. 30A, § 1 (5).* General Laws c. 30A, § 1 (5), defines a "[r]egulation," in part, as a "requirement of general application."[6] Section 2 of the same chapter requires that an agency hold a public hearing before adopting a regulation if a violation of the regulation will be punishable by fine or imprisonment. The plaintiffs argue that the wage rate established for teamsters by the commissioner is a regulation and, since a failure to pay that rate is punishable by fine or imprisonment, the lack of such an antecedent hearing makes the wage rate unenforceable.

The scheme of G. L. c. 149, § 27, quite clearly requires that the commissioner set wage rates for *each* public works job. Any time that any public official or public agency plans to award a public works contract, the commissioner will set the wage rates applicable to *that project.* Rather than being a requirement of general application, we think the rate determinations required of the commissioner are very specific in application. Even though the commissioner refers to the same Statewide collective bargaining agreement each time he sets rates for teamsters on a public works project,[7] he sets rates for each job on each project separately. The rates he sets are

work site. That is what the commissioner has done. The maxim cited by the plaintiffs is not applicable to this case.

[6]The complete text of G. L. c. 30A, § 1 (5), is as follows: " 'Regulation' includes the whole or any part of every rule, regulation, standard or other requirement of general application and future effect, including the amendment or repeal thereof, adopted by an agency to implement or interpret the law enforced or administered by it, but does not include (*a*) advisory rulings issued under section eight; or (*b*) regulations concerning only the internal management or discipline of the adopting agency or any other agency, and not substantially affecting the rights of or the procedures available to the public or that portion of the public affected by the agency's activities; or (*d*) regulations relating to the use of the public works, including streets and highways, when the substance of such regulations is indicated to the public by means of signs or signals; or (e) decisions issued in adjudicatory proceedings." Clause (*c*) was deleted by St. 1974, c. 361.

[7]This result is a consequence of the fact that such a Statewide agreement is in existence presently. In different circumstances, the commissioner would make reference to other factors in setting such wages. See G. L. c. 149, § 26.

not "regulations" under G. L. c. 30A, § 1 (5). See *Associated Indus. of Mass.* v. *Commissioner of Ins.*, 356 Mass. 279, 284 (1969) (even though there was essential uniformity in the rate filings by companies, the statute permitted dealing with each filing separately and so the rates were not of general application). The case of *Allied Theatres of New England* v. *Commissioner of Labor & Indus.*, 338 Mass. 609 (1959), relied upon by the plaintiffs, is distinguishable because the wage determination in that case applied to an entire industry, not to a single project as in this case.

4. *Delegation of legislative power.* The plaintiffs' last contention is that the scheme created by G. L. c. 149, §§ 26 and 27, constitutes an unlawful delegation of legislative power. Article 30 of the Massachusetts Declaration of Rights provides for the strict separation of powers in the government of the Commonwealth. The doctrine of separation of powers encompasses the general principle that the Legislature cannot delegate the power to make laws. *Brodbine* v. *Revere*, 182 Mass. 598, 600 (1903). Nevertheless, it is well established that the "Legislature may delegate to a board or officer the working out of the details of a policy adopted by the Legislature." *Massachusetts Bay Transp. Auth.* v. *Boston Safe Deposit & Trust Co.*, 348 Mass. 538, 544 (1965). Ultimately, the determination whether a particular delegation of authority is proper is a question of degree. In making that determination, we engage in a tripartite analysis: "(1) Did the Legislature delegate the making of fundamental policy decisions, rather than just the implementation of legislatively determined policy; (2) does the act provide adequate direction for implementation, either in the form of statutory standards or, if the [commissioner] is to develop the standards, sufficient guidance to enable [him] to do so; and (3) does the act provide safeguards such that abuses of discretion can be controlled?" *Chelmsford Trailer Park, Inc.* v. *Chelmsford*, 393 Mass. 186, 190 (1984).

General Laws c. 149, § 26, pronounces a legislative policy requiring the payment of certain minimum wages to persons employed in the construction of public works. The commis-

sioner is given the task of determining what those wages should be. The third proviso of § 26 mandates that the wages to be paid to employees shall not be less than the rates established in "collective agreements or understandings in the private construction industry between organized labor and employers." The wage rates for the teamsters in this case were based on rates established in a State-wide collective bargaining agreement. The plaintiffs contend that this constitutes a delegation of legislative power to private employers and labor groups, since the commissioner is bound to set the wage rates for teamsters on public works projects at the rate agreed to by those private entities. The plaintiffs misconstrue the statute.

In *Corning Glass Works* v. *Ann & Hope, Inc. of Danvers*, 363 Mass. 409, 424 (1973), we held that a statute which allowed manufacturers to fix retail prices improperly delegated legislative power to private parties. The instant case is distinguishable because private parties are *not* given the authority to set wage rates. General Laws c. 149, § 26, directs the commissioner to determine wage rates. By the third proviso of § 26, the Legislature has announced a policy in this State that, in certain circumstances, the wages of employees on certain public jobs, as determined by the commissioner, shall not be less than the wages earned by unionized employees. This is not the delegation of legislative power, but the exercise of it. The statute does not contemplate, nor do we think it likely to occur, that a collective bargaining agreement will be entered into for the purpose of setting wages on public works construction projects. The Legislature, recognizing that collective bargaining agreements are the result of extensive negotiations between competing interests, was justified in making collective bargaining agreements a source of reference for determining the prevailing wage. By requiring that the wages of employees on public works projects must not be less than the wages paid in another segment of the economy, the statute does not improperly delegate legislative authority. Accord *West Ottawa Schools* v. *Labor Director*, 107 Mich. App. 237 (1981); *Male* v. *Ernest Renda Contracting Co.*,

122 N.J. Super. 526 (1973), aff'd, 64 N.J. 199, cert. denied, 419 U.S. 839 (1974).

We are unable to see how G. L. c. 149, § 26, delegates legislative authority to private parties. But even if we were to accept the plaintiffs' characterization that there is a delegation, we think this case is on a different footing from *Corning Glass Works, supra.* Certainly, a delegation to a private party is permissible if there are proper safeguards to prevent the arbitrary exercise of authority. *DiLoreto* v. *Fireman's Fund Ins. Co.*, 383 Mass. 243, 246 (1981). Under G. L. c. 149, §§ 26 and 27, the commissioner, an executive branch official, is intricately involved in the process of making wage determinations. The statute clearly spells out the legislative policy of providing certain minimum wages. Moreover, the statute provides detailed standards as to how those wages should be determined. In the instance where collective bargaining agreements are used, the competing interests involved in the formation of those agreements will likely ensure that a fair and reasonable wage rate results. There is also a process for administrative review of wage determinations and job classifications. When viewed as a whole, we think that the statutory scheme provides sufficient safeguards to make proper any delegation which does occur. *DiLoreto, supra* at 245-248.

5. *Conclusion.* The judgment of the Superior Court is modified to declare that the commissioner has the authority, under G. L. c. 149, §§ 26-27F, to set wage rates for the drivers of trucks hauling bituminous concrete to public works projects and thereafter aiding in the installation of that concrete. That portion of the judgment which declared that the question of the application of G. L. c. 149, §§ 26-27F, to plaintiffs is to be determined in accordance with the procedures in G. L. c. 149, § 27A, and cannot be determined on a global or abstract basis is vacated. In all other respects, the judgment of the Superior Court is affirmed.

*So ordered.*