**STATE of Vermont v. Seth MORGAN**

[789 A.2d 928]

No. 00-343

December 19, 2001. Defendant Seth Morgan appeals from a district court order that requires defendant to pay the clerk of the court $513.00 within sixty days to repay the state for the services of appointed counsel. He contends that he has no ability to pay this money. We reverse and remand for additional findings.

Before considering the circumstances of this case, we examine the statutory framework for appointment of counsel. The public defender statute creates a three-step procedure for consideration of the applicant's financial circumstances. In the first step, the court determines whether the applicant is needy by considering the applicant's income, assets, outstanding obligations and number of dependents. 13 V.S.A. § 5236(b). "A needy person is a person who at the time of need assessment is financially unable, without undue hardship, to provide for full payment of an attorney and all other necessary expenses of representation or who is otherwise unable to employ an attorney." A.O. 4, § 5(b). If the applicant is determined to be needy and is charged with a serious offense, then the court will assign counsel.

In the second step, the court determines the applicant's ability to pay for all or part of the defender services. 13 V.S.A. § 5238(b). At this step, the income of the applicant's cohabitating family members is deemed to be income of the applicant. *Id.*; A.O. 4, § 5(d). Any applicant whose income is above 125% of the federal poverty guidelines is presumed able to pay part of the cost of services. *Id.* The statute sets forth the repayment amount, according to income,

as a percentage of the average direct cost of representation per case. 13 V.S.A. § 5238(c). In the third step, the court designates the repayment amount as a co-payment, which must be paid prior to assignment of counsel, *id.* § 5238(d), as reimbursement, which must be paid within sixty days of the order, *id.* § 5238(e), or partially co-payment and partially reimbursement.

An applicant who has been ordered to make a co-payment or reimbursement may petition the court at any time for remission of all or part of the amount on the ground that it will impose a manifest hardship on the applicant or the applicant's family. See *id.* § 5238(f). The applicant may also appeal a co-payment or reimbursement order to a single justice of this Court. *Id.* § 5238(h).

In this case, defendant was charged with burglary of an occupied dwelling in violation of 13 V.S.A. § 1201(c). On July 17, 2000, at his initial appearance, he applied for public defender services. His application form indicates that he was eighteen years old and had had no income in the previous twelve months. It also states that there are five other people in his household: mother, step-father, grandmother, grandfather, and uncle. Gross income from wages of the cohabitants during the last twelve months was $42,576.00, although these wages appear to be only those of mother and stepfather. Under assets, the form lists three vehicles, two valued at $5,000 and $10,000 respectively, and one on which $2,370 is owing and no net worth is indicated. There are also two bank accounts listed: defendant's account with $8.23 and the cohabitants' savings account with $1,071.00. Under monthly expenses, defendant has indicated that he has $162 of expenses per month for automobile insurance, life insurance and motor vehicle loan payment. He lists no other expenses.

The court made no further inquiry. Based on the information in the applica-

tion, the court found that defendant is a needy person because he does not have sufficient assets or income to retain counsel. Because defendant is needy and is charged with a serious offense, the court ordered assignment of counsel. The court, however, ordered defendant to pay $513.00 — 100% of the average direct cost of representation — for the services of assigned counsel. All of the $513 was designated a reimbursement due within sixty days of the order.

Defendant appealed to this Court, stating "I am 18 years old and I don't have a job and have no means of being able to pay this money." He indicates that his mother and stepfather are allowing him to live with them until he gets his diploma, a job and a place of his own. Nonetheless, according to defendant, they do not support him. Upon receiving this notice of appeal, this Court, in a single-justice decision, requested that the Defender General submit a brief addressing the constitutionality of 13 V.S.A. § 5238(b) and A.O. 4, § 5(d), which require, in determining the reimbursement amount, that "income of the applicant's cohabitating family members shall be deemed to be income of the applicant." A.O. 4, § 5(d). The Defender General has filed an amicus brief, arguing that the rule violates defendant's rights under the Due Process Clause and the Sixth Amendment of the United States Constitution.

In *Fuller v. Oregon*, 417 U.S. 40 (1974), the United States Supreme Court considered the constitutionality of an Oregon reimbursement statute that allowed the court to require a convicted defendant to repay the costs for services of appointed counsel. The Oregon statute provided two safeguards: (1) "a court may not order a convicted person to pay these expenses unless he 'is or will be able to pay them,'" and (2) "a convicted person under an obligation to repay 'may at any time petition the court which sentenced him for remission of the payment of costs

or of any unpaid portion thereof.'" *Fuller*, 417 U.S. at 45. Thus, "[d]efendants with no likelihood of having the means to repay are not put under even a conditional obligation to do so, and those upon whom a conditional obligation is imposed are not subjected to collection procedures until their indigency has ended and no 'manifest hardship' will result." *Id*. at 46.

The petitioner in *Fuller* argued that the recoupment statute impinged on his constitutional right to have counsel provided by the state because the knowledge that he might be obligated to repay the state might impel him to decline the services, thus chilling his constitutional right to counsel. The Court disagreed. Noting that the reimbursement provisions in no way affected eligibility for appointed counsel, it held that there was no constitutional requirement that indigent defendants must remain forever immune from any obligation to shoulder the expenses of legal defense even when they become able to pay without hardship. *Id*. at 53-54. In reaching this decision, the Court emphasized the statute was "tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship." *Id*. at 54.

In view of *Fuller*, we hold that, under the Sixth Amendment to the United States Constitution, before imposing an obligation to reimburse the state, the court must make a finding that the defendant is or will be able to pay the reimbursement amount ordered within the sixty days provided by statute.* In

---

* Contrary to the dissent's assertion, we do not hold that a hearing is required to make an independent determination of whether the family members' income is available to defendant irrespective of whether defendant contests that fact. As

many cases, it will be evident from the information provided by the defendant on the application form whether the defendant will have the ability to pay. In this case, however, it is not. The application here raises as many questions as it answers. For example, the form indicates that defendant has no income but pays $162 per month for automobile insurance, life insurance and automobile loan payments. Further, the application indicates that defendant has no expenses for food, rent or clothing. Despite the incomplete information, the court did not request a sworn explanation of how defendant survives without income, although the application indicates that it may do so, presumably because the application indicates that defendant lives with his parents.

Although the "income of the applicant's cohabitating family members shall be deemed to be income of the applicant," A.O. 4, § 5(d), to meet constitutional muster, the court must make the finding that the defendant is or will be able to pay the repayment amount within the sixty days. We distinguish this case from one in which the applicant is a juvenile, in

---

noted above, the constitutionally required finding, that defendant is able to pay the reimbursement amount within the 60 days, can ordinarily be made from the information provided by the defendant on the application form. It may be — as dissent speculates — that a cost-benefit analysis will ultimately demonstrate that the resources expended to recoup the cost of representation for defendants similarly situated to the defendant here undermine the program's reimbursement objective. That speculation is, of course, not relevant to the constitutional requirement that, before imposing an obligation to reimburse the state for the cost of representation, the court must make a finding that the defendant is or will be able to pay the reimbursement amount ordered.

which case, the court may not order the juvenile to pay any part of the costs of representation, see 13 V.S.A. § 5238(g), but may order the parents to repay the state as a necessity for which parents are liable. See *In re J.B.*, 157 Vt. 668, 669, 603 A.2d 368, 369 (1991) (mem.) (single-justice decision). Here, the parents have no legal obligation to support their eighteen-year-old son. Thus, while the court must consider the parents' income under the statute, it must also make the constitutionally required finding that defendant will be able to repay the reimbursement amount within sixty days. Here, the court failed to do so. Cf. *Ex parte Sanders*, 612 So. 2d 1199, 1201 (Ala. 1993) (requiring state to pay for indigent defendant's expert although defendant's family, without legal obligation to do so, was paying for counsel); *State v. Gardner*, 626 S.W.2d 721, 724 (Tenn. Crim. App. 1981) (requiring appointment of counsel for indigent defendant although father could have hired attorney because father had no such legal duty).

On appeal, defendant has asserted the additional facts that he does not have a job and is living with his parents until he gets his diploma. His application, however, was filed in July, so it is not apparent that defendant was actually enrolled in school at the time it was filed, and thus, does not explain why he does not have a job. In sum, we must conclude that neither the evidence nor the findings are adequate to determine whether defendant will have the ability to pay the $513 within the sixty days. Thus, we remand for further findings.

We address one final issue. The State has argued that this case should be dismissed because defendant failed to exhaust his remedies before the trial court before bringing this appeal. It points to 13 V.S.A. § 5238(f), which provides:

> A person who may be or has been ordered to pay all or part of the cost of representation by co-payment or reimbursement order may at any time petition the court making the order for remission of all of the amount or any part thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardships on the defendant or the defendant's immediate family or that circumstances of case disposition and the interests of justice so require, the court may remit all or part of the amount due or modify the method of payment.

Thus, the State contends that, before appealing to this Court, a defendant must move before the trial court for remission of all or part of the reimbursement amount. In general, we agree. In this case, however, we do not.

In upholding the Oregon statute in *Fuller*, the Court relied upon two statutory safeguards to protect the interests of indigent defendants. One safeguard allowed a defendant to petition the court at any time for remission of the reimbursement amount or any unpaid portion thereof. *Fuller*, 417 U.S. at 45. That provision is similar to § 5238(f). But the other safeguard required, as a condition necessary for the initial imposition of the reimbursement obligation, is a finding that the defendant is or will be able to pay the reimbursement amount. The Vermont statute has no analogous provision. We conclude, however, that the requirement of the initial finding prior to imposition of any repayment obligation was necessary to the *Fuller* decision, and thus, we require this finding under the Sixth Amendment.

We will not require defendant to raise the ability-to-pay issue under subsection (f) prior to appealing because his claim is that the court is required to make the ability-to-pay finding before imposing any reimbursement obligation in the first

instance. Requiring a subsection (f) request before an appeal in this case would impose upon defendant the very procedure that he challenges — and we have agreed — by shifting the burden of raising the issue in the first instance from the court to defendant.

*Reversed and remanded.*

**Morse, J.,** dissenting. I would affirm. By ordering reimbursement, the trial court implicitly made a finding that defendant individually would be able to reimburse. See 13 V.S.A. § 5238(b) (court shall order a defendant to pay for all or part of the cost of representation "based upon *his or her ability to pay*") (emphasis added). It did so under the statute that presumes that the income of a defendant's cohabiting family members is available to a defendant when making a determination regarding ability to pay. See *id.;* see also A.O. 4, § 5(d) (for purposes of co-payment and reimbursement determinations, income of an applicant's cohabiting family members is deemed available to the applicant); *State v. Bailey,* 165 Vt. 579, 579, 682 A.2d 1387, 1387 (1996) (mem.) (trial court may not consider income of cohabiting family members in determination of whether a defendant is needy and therefore entitled to appointment of counsel, but may do so in determining co-payment and reimbursement amounts). Furthermore, it is generally accepted that it is defendant's burden to demonstrate the inability to pay for counsel. See, e.g., *Nikander v. Dist. Court,* 711 P.2d 1260, 1262 (Colo. 1986); *State v. Smith,* 677 A.2d 1058, 1060 (Me. 1996); *State v. Vincent,* 883 P.2d 278, 283 (Utah 1994). The trial court simply evaluated the information presented on defendant's application for appointed counsel in light of defendant's burden, as well as the presumption described above.

Notably, if, as alleged on appeal, it would be a hardship for defendant to reimburse because he does not in fact receive support from his family, defendant has an opportunity to present that information to the trial court in a petition for remission, and the trial court may amend its order. See 13 V.S.A. § 5238(f) (court may remit all or part of amount due from defendant if it will impose manifest hardship on the defendant or the defendant's immediate family). These facts, however, were not presented to the trial court in any form by defendant, and we may not consider them here.

The court here properly followed the statutory scheme in issuing its reimbursement order, including the portion of the scheme that creates a presumption that the income of cohabiting family members is available to the defendant.[1] If the statutory scheme is constitutional, then the order should be affirmed. If, conversely, the statutory scheme is unconstitutional, as the majority seems to imply, then the Court should make that explicit.[2] That is the very question

---

[1] I take issue with the Court's observation that the trial court "made no further inquiry" beyond the information provided by the defendant on his application. Although a court may make inquiry, there is no obligation under the statute to go behind the facts recited in the application for appointment of counsel. There was sufficient information before the court to support the order in this case under the statutory scheme.

[2] I read the Court's opinion to hold that the statutory scheme is constitutional only if a trial court holds a hearing to make an independent determination of whether the family members' income is available to defendant *before* issuing a reimbursement order, regardless of whether defendant contests that fact, rather than doing so at the remission stage. In effect, the Court holds that the statutory presumption is unconstitutional. I disagree as I discuss *infra.* I understand the Court's desire to insure

we asked the parties to brief. I believe the scheme *is* constitutional, and would thus affirm.

On a general level, our statutory scheme does not impinge on a defendant's Sixth Amendment right to counsel under *Fuller v. Oregon*. As I described above, our statute only allows a reimbursement order based on a judicial determination of an *individual's* ability to pay. Furthermore, it affords a defendant the opportunity to seek remission if the order would create undue hardship for the defendant or the defendant's family. It was these two attributes that the United States Supreme Court found essential to a constitutional reimbursement scheme under the Sixth Amendment. See *Fuller v. Oregon*, 417 U.S. 40, 45-46, 53-54 (1974) ("Oregon's legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship."). Thus, I do not believe that our scheme impermissibly chills a defendant's right to appointed counsel.

Nor do I believe considering the income of third parties, including family members, in a determination of an individual defendant's ability to repay the government violates any constitutional principle, as long as that money is *available* to the defendant. In interpreting the

that a defendant is not unfairly saddled with the cost of appointed counsel when the defendant is financially unable to meet that obligation. Nevertheless, if doing so entails using up more of the state's resources, including court time as well as attorney time, I question whether the program's goal of recouping resources is served. Rather than wasting precious court and attorney time attempting to get water from a stone, perhaps we should just accept such costs as the price of protecting individuals' constitutional rights.

federal Criminal Justice Act, which allows for reimbursement of the government for the costs of assigned counsel, 18 U.S.C. § 3006A(f) (allowing court to order reimbursement if it determines that sometime subsequent to the assignment of counsel "funds are available for payment from or on behalf of a person furnished representation"), courts have made clear that the dispositive issue regarding whether third-party funds should be considered in such a determination is whether the funds are available to or within the control of a defendant. See, e.g., *United States v. Bracewell*, 569 F.2d 1194, 1198-2000 (2d Cir. 1978) (noting that claims to funds, which had been seized by the government, made by defendant's family members should be considered in determining whether those funds were available to defendant in case where court made no inquiry or determination regarding defendant's financial status before ordering reimbursement under CJA); *United States v. Bursey*, 515 F.2d 1228, 1239 (5th Cir. 1975) (under CJA, government could not *automatically* seize $1000 bond deposit posted by adult defendant's parents for reimbursement of costs of court-appointed counsel based on *conclusive* assumption money was within defendant's control; rather, hearing was necessary to determine whether this money was available to the defendant); *Ybarra v. Wolff*, 571 F. Supp. 209, 212-13 (D. Nev. 1983) (ordering reimbursement by defendant under CJA where a number of assets were held by wife and wife admitted to court that she was holding one-half of everything in her possession for defendant); see also *United States v. Salemme*, 985 F. Supp. 197, 201, 203 (D. Mass. 1997) (noting that, in determining whether a defendant is eligible for appointed counsel under CJA, court should determine whether income is available to defendant from other sources — court ordered defendant to disclose all funds available to him for his defense from

·"family, friends, trusts, or estates"); *United States v. Robinson,* 718 F. Supp. 1582, 1583 (M.D. Ga. 1989) (determining that defendant had failed to demonstrate a financial inability to retain counsel on appeal under CJA where an unidentified third party had paid $9000 cash on defendant's behalf to retain trial counsel). I have yet to uncover a case holding that .consideration of income available to a defendant from third parties in making a reimbursement order violates a constitutional provision.

The question, then, is this: Do those portions of our statutory scheme that provide for a *presumption* that the income of cohabiting family members is available to an individual defendant at the reimbursement stage, but also afford defendants an opportunity to demonstrate otherwise at the remission stage, deprive defendants of procedural due process? I believe the answer is "no."

. A reimbursement order such as this is in the nature of a civil judgment.[3] As

---

[3] This is in contrast to the portion of the statutory scheme providing that such an order automatically becomes part of a defendant's sentence, if convicted, and is enforceable as a condition of probation, supervised community service or parole. 13 V.S.A. § 5240(d). The constitutionality of that provision is not before us in the . case at hand. Cf. *Basaldua v. State,* 558 S.W.2d 2, 7 (Tex. Crim. App. 1977) (holding statutory scheme, which provided for automatic assessment of cost of court-appointed counsel against defendant upon conviction and allowed court to make repayment a condition of probation without regard to ability to pay, was consistent with constitution where defendant's probation could not be revoked unless failure to make payment was intentional and defendant was able to make payment); see also *Bearden v. Georgia,* 461 U.S. 660, 672-73 (1983) ·(holding that probation may not be

such, the proper due process analysis is that applied to evidentiary presumptions in the civil context. The United States Supreme Court has stated:

> That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed.

*Mobile, Jackson & Kansas City R.R. v. Turnipseed,* 219 U.S. · 35, 43 (1910), quoted in *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 28 (1976); see also *Vance v. Terrazas,* 444 U.S. 252, 267-70 (1980) (evaluating rationality of a presumption mandated by statutory scheme governing loss of United States citizenship); *Keith Fulton & Sons, Inc. v. New England Teamsters & Trucking Indus. Pension Fund, Inc.,* 762 F.2d 1137, 1143-46 (1st Cir. 1985) (evaluating rationality of statutory presumption of reasonableness created under statutory scheme governing multiemployer pension plans); *DiLoreto v. Fireman's Fund Ins. Co.,* 418 N.E.2d 612, 615-16 (Mass. 1981) (evaluating under due process clause

---

revoked for failure to pay a fine or restitution, if such failure is based solely on an individual's indigency, and requiring that an inquiry be made into such matters prior to any revocation).

insurance regulation creating presumption of fault regarding certain types of automobile accidents).

It is both reasonable and rational to draw an inference that, if family members are cohabiting, they are likely sharing resources, see *State v. Vincent*, 883 P.2d 278, 283 n.6 (Utah 1994) (noting with approval trial court's conclusion that two individuals living together as a family, although not married, formed an economic unit; thus, both incomes could be considered in making indigency determination), in other words, to presume that cohabiting family members' income is available to a defendant. Furthermore, this presumption only operates at the preliminary stage of determining whether and in what amount a defendant ought to reimburse the state for court-appointed counsel. The statutory scheme affords a defendant an opportunity to contest this conclusion via a petition for remission. Although it may be preferable for this opportunity to come prior to any order of reimbursement, I believe the current procedure is constitutionally adequate. Cf. *State v. Blank*, 930 P.2d 1213, 1218-21 (Wash. 1997) (concluding that neither the Sixth Amendment nor due process requires a determination of ability to pay prior to a recoupment order as long as an opportunity to demonstrate an inability to pay exists at the enforcement stage); see also *State v. Albert*, 899 P.2d 103, 109-13 (Alaska 1995) (concluding that Sixth Amendment does not require a determination of ability to pay prior to issuing a recoupment order as long as safeguards are in place to prevent economic hardship to a defendant or a defendant's family, and holding that state statute that provided a hearing on ability to pay only if requested by defendant constitutional). "Finding the best method . . . is not our function; under the due process precedents which guide us, we must only find that [the Legislature] acted rationally in designing

the procedure [at issue.]" *Keith Fulton & Sons*, 762 F.2d at 1144.

Thus, because I do not believe our statutory scheme suffers from a constitutional infirmity and because the trial court adhered to the statutory scheme in issuing its reimbursement order, I respectfully dissent. I would affirm the order, knowing that the defendant may still seek remission based on the facts he alleges on appeal. I am authorized to say that Justice Skoglund joins in this dissent.