Botsford, J.
The plaintiff, Ruba Gnanaratnam appeals under G.L.c. 30A, §14, from a decision of the Board of Appeal on Motor Vehicle Liability Policies and Bonds (the board), which upheld a surcharge imposed by the plaintiff s insurer. For the reasons summarized below, the board’s decision is reversed.
Background
The evidence in the administrative record reveals the following. On September 2, 1998, at approximately 6:10p.m., the plaintiff was involved in a motor vehicle accident on Washington Street in Woburn, Massachusetts. The plaintiff was driving her Honda north, and Washington Street has two northbound lanes. She was in the right hand northbound lane; a Mercedes was somewhat ahead of her in the left northbound lane. *288 According to the plaintiff, the Mercedes veered to the right into her lane without signaling, and then swung left, again without signaling, and came to a complete stop. The Mercedes stopped in a position that was almost perpendicular to the northbound lanes, and the wheels of the Mercedes crossed the solid yellow line separating the northbound lanes from the single southbound lane. Immediately before it stopped, the driver of the Mercedes was attempting to make a left hand turn from the northbound lanes of Washington Street across the southbound lane and into a gas station located on the side of the southbound lane. (A car was traveling south on Washington Street toward the Mercedes as it began to turn, which may explain why the Mercedes stopped suddenly.) The plaintiff was driving at about 20 m.p.h., and was following the Mercedes by three car lengths when the Mercedes stopped. The plaintiff was not able to stop in time, and hit the right rear bumper of the Mercedes. Damage to each vehicle was over $500. Despite the collision, the Mercedes completed the left turn and drove into the gas station without stopping to exchange information with the plaintiff. The plaintiff followed the Mercedes into the station. Another man, not the driver of the Mercedes, walked out of the station and spoke to the plaintiff stating words to the effect of “I am the owner of the Mercedes; do you have a problem with that?” The plaintiff requested that a police officer be called. A police officer arrived approximately one half hour after the accident. The man who had been driving the Mercedes was present at the station, but standing or working some distance away from the plaintiff and from the police officer. After speaking to the plaintiff and the owner of the Mercedes, the police officer issued a citation to the plaintiff for failing to use due care.[2] The plaintiff paid the citation.
The evidence presented at the hearing before the board consisted of the plaintiffs testimony, her accident report,[3] a written statement by the plaintiff that appears to have been prepared at the same time as the accident report, the plaintiffs appeal of the surcharge, and the police report. The plaintiffs accident report and handwritten statement are each dated September 7, 1998, and her surcharge appeal form is dated September 29, 1998. All three state that the Mercedes did not use any signals when the car came into the right northbound lane, or when it began to turn left to reach the gas station. The police report is dated September 2, 1998. It begins its narrative section by stating that the Mercedes (vehicle 2) was traveling south on Washington Street, although all the other evidence in the case is that both the plaintiff and the Mercedes were traveling north. The police report does not state whether or not the driver of the Mercedes signaled when he started to turn left to reach the gas station.
The plaintiffs appeal of the surcharge was heard before a hearing officer of the board on June 23, 1999, and the plaintiff was apparently the only witness. In a decision dated June 24. 1999, the hearing officer relied on the board’s presumption of fault No. 03, 211 Code of Mass. Regs. §74.03, which provides that “[t]he operator of a vehicle subject to the Safe Driver Insurance Plan shall be presumed to be more than 50% at fault when operating a vehicle which is in collision with the rear section of another vehicle." The hearing officer concluded that the plaintiff did not use due care in the control and operation of her vehicle because she was unable to maintain control of the vehicle and come to a controlled stop without striking the other vehicle. He further concluded that “the totality of the evidence supports the application of the presumption” set out in 211 Code Mass. Regs. §74.03, and upheld the surcharge.
Discussion
The plaintiff argues that the board’s decision should be reversed because, inter alia, it was not supported by substantial evidence and was arbitrary and capricious. See G.L.c. 30A, §14(7). It maybe that the decision in a technical sense is supported by substantial evidence, since there was a collision with the rear end of another vehicle and the presumption of fault set out in 211 Code Mass. Regs. §74.04(3). applied. See DiLoreto v. Fireman’s Fund Ins. Co., 383 Mass. 243, 249 n.5 (1981). However, in view of the record presented, I agree with the plaintiff that the decision was arbitrary.
The record contains testimony and reports by the plaintiff, all of which state unequivocally that the driver of the Mercedes changed lanes without a signal and without warning, attempted a left turn, again without a signal, and suddenly stopped with its front wheels over the solid yellow line dividing the northbound lanes from the southbound lanes of the street. The board’s decision does not mention the Mercedes’ change of lane — the decision indicates both drivers were always driving in the same lane as each other, the plaintiff behind the Mercedes — omits any reference to the Mercedes’ wheels crossing the yellow line, and further contains no mention of whether or not the driver of the Mercedes used a signal. It might be argued that these omissions in the board’s decision simply mean that the board’s hearing officer did not credit the plaintiff s evidence on these points. But the basis of this non-belief is unexplained, and, in my view, essentially inexplicable.
With respect to the change of lane, in addition to the plaintiffs evidence that she was in one northbound lane and the driver of the Mercedes in the other, the police report notes that Washington Street has two northbound lanes. (A.R. p. 9) The police report is obviously in error when it states that the Mercedes was driving south — there seems no dispute that both vehicles were driving in a northbound direction — and thus the board cannot justify its apparent conclusion that the plaintiff and the Mercedes were always in the same lane on the police report.[4] There is no other evidence *289 presented to support the board’s implicit conclusion that both drivers were driving in the same lane. The point is significant because the board found that the plaintiff failed to keep "a reasonable and prudent distance” between her vehicle and the other vehicle “to permit her to come safely to a stop.” See 720 Code Mass. Regs. §9.06(7), cited by the board in its decision. (A.R. p.2.) Clearly, if the two vehicles were traveling in different lanes, the rule about keeping the proper distance in order to be able to stop would not apply.[5] There appears .to be no reasonable basis for the board’s ignoring or rejecting the plaintiffs evidence of the two lanes.
The board’s implicit refusal to find that the Mercedes driver failed to use his signal in turning is the next evidentiary point of concern. As previously indicated, the police report does not state whether the Mercedes’ driver did or did not use a signal when he moved into the right-hand lane or when he started his left turn to the gas station, but the police report was prepared by an officer who did not witness the accident, and it is not clear that he spoke to the driver of the Mercedes. (See note 2 above.) On the other hand, the plaintiff expressly states she told the officer about the lack of signal. (A.R. 12.) In the circumstances, where the driver of the Mercedes did not testily, did not write out any accident report, and does not appear to have contradicted in any way the plaintiffs information that he failed to use a signal, the board’s rejection of the plaintiffs evidence on the point, with no explanation given at all, is arbitrary. Cf. Tamber v. Desrochers, 45 Mass.App.Ct. 234, 238-39 (1998). Cf. also Springgage v. School Commonwealth of Mattapoisett, 11 Mass.App.Ct. 304, 309-16 (1981). This is a significant error. Under the board’s own “standards of fault” regulations, 211 Code Mass. Regs. §74.00, on which the board relied in upholding the surcharge against the plaintiff, a driver who fails to signal before turning or changing lanes is presumed to be more than 50 percent at fault if he is then involved in a collision.[6] Furthermore, the same regulations provide that a driver who is in a collision with another vehicle and who violates a listed statutory or regulatory provision on safe driving is also presumed to be more than 50 percent at fault. See 211 Mass. Code Regs. §74.04(20)[7] The facts of this case suggest that the driver of the Mercedes violated G.L.c. 90, §14B,[8] as well as 720 Code Mass. Regs. §9.06(9),[9] both of which are included in the safe driving provisions listed in 211 Code Mass. Regs. §74.04(20).[10]
The board’s decision contains few factual findings; it consists mostly of conclusions. The facts discussed above, which the board failed or refused to consider in its decision, materially affect the outcome. The plaintiffs position in a separate lane from the Mercedes’ initial position undercuts the board’s conclusion that the plaintiff failed to maintain an appropriate distance to stop, and the Mercedes driver’s failure to signal would indicate that the driver at the very least was equally at fault with the plaintiff; two drivers cannot each be more than 50 percent at fault. In the circumstances, the presumption set out in 211 Code Mass. Regs. §74.04(5), ceases to have operative effect. Cf. Merisme v. Board of App. on Motor Vehicle Liability Policies and Bonds, 27 Mass.App.Ct. 470. 476 (1989).
In reviewing the board’s decision, I must give due weight to the experience and specialized knowledge of the board and may not substitute my judgment for the board’s. See, e.g., Fitchburg Gas & Elec. Light Co. v. Department of Pub. Utils., 394 Mass. 671, 681 (1985). Nevertheless, from the administrative record presented, I conclude that the board’s decision was arbitrary and an abuse of discretion. See G.L.c. 30A, §14(7)(g). It must be reversed.
ORDER
For the foregoing reasons, the decision of the Board of Appeal on Motor Vehicle Liability Policies and Bonds is reversed.

 The plaintiff states that the police officer spoke at length to the owner of the Mercedes, but never spoke to the driver of the Mercedes about the accident. (Administrative Record [A.R.] 12.) The police report contains a number of references to information given the officer by the plaintiff, but does not make any individual reference to the driver of the Mercedes, a fact which supports the plaintiffs statement. However, the report does state that the Mercedes “started to make left turn into gas station as stated by both operators . . .’’It may be that the officer received this information from both the plaintiff and the owner of the Mercedes, but it is also possible that the officer did speak to the driver of the Mercedes. Neither the police officer nor the driver of the Mercedes testified at the hearing. The Mercedes’ owner also did not testify.

 The accident report is not included in the administrative record certified by the board, but a copy of it is attached to. the plaintiffs complaint in this case. The board’s memorandum refers to the accident report as having been before the board’s hearing officer at the time he made his decision in the case, and I have considered it as part of the administrative record.

 The police report has a drawing that is ambiguous on the issue of lanes. Moreover, in view of the fact that the police officer did not witness the collision, his drawing must be interpreted as reflecting information supplied to him. His report does not contain any information indicating he was told by anyone that both drivers were always traveling in the same northbound lane.

 It bears noting that the board cited another regulation of the Massachusetts Highway Department. 720 Code Mass. Regs. §9.06(9), to support its conclusion that the plaintiff had failed to keep the proper distance between her and the other vehicle. The cited regulation deals with the obligation to use care in starting, stopping and turning while on a highway, and thus appears more applicable to the Mercedes’ driver than to the plaintiff. See note 8, below.

 See 211 Code Mass. Regs, §74.04(07), which reads as follows:
(07) Failure to Signal. The operator of a vehicle subject to the Safe Driver Insurance Plan shall be presumed to be more than 50% at fault when operating a vehicle which is in collision while failing to signal as required by law before turning or changing lanes.

 This section provides:
*290 (20) Failure to Obey the Rules and Regulations for Driving. The operator of a vehicle subject to the Safe Driver Insurance Plan shall be presumed to be more than 50% at fault where the operator violates any provision of M.G.L. Chs. 85, 89, or 90, or fails to obey the following regulations . . . MA Department of Highways (720 CMR). . . and whose vehicle is in a collision with another vehicle.

 G.L.c.90, §14B provides:
Every person operating a motor vehicle before stopping said vehicle or making any turning movement which would affect the operation of any other vehicle, shall give a plainly visible signal by activating the brake lights or directional lights or signal as provided on said vehicle; and in the event electrical or mechanical signals are not operating or not provided on the vehicle, a plainly visible signal by means of the hand and arm shall be made . . .

 This section provides:
(9) Care in Starting, Stopping, Turning or Backing. Except as otherwise provided in 720 CMR 9.08(3) the driver of any vehicle before starting, stopping, turning from a direct line, or backing shall first see that such movement can be made in safety. If such movement cannot be made in safety or if it interferes unduly with the normal movement or other traffic, said driver shall wait for a more favorable opportunity to make such a movement. If the operation of another vehicle should be affected by a stopping or turning movement, the driver of such other vehicle shall be given a plainly visible signal, as required by M.G.L.c. 90, §14B.

 It also appears that the presumption of fault found in 211 Mass. Code of Regs. §74.04(05) would apply to the Mercedes’ crossing over the yellow line. This section reads:
(05) Out of Lane Collision. The operator of a vehicle subject to the Safe Driver Insurance Plan shall be presumed to be more than 50% at fault when operating a vehicle which is partially or completely out of its proper lane and is in collision with another vehicle:
(a) while being passed by the other vehicle, the passing vehicle being in its proper lane;
(b) while passing the other vehicle, the other vehicle being in its proper lane; or
(c) while changing or turning into or across the other vehicle’s lane.