Agnes, A.J.
INTRODUCTION
This is a civil action in which the plaintiff, Judi M. Scipione, seeks judicial review pursuant to G.L.c. 30A, §14 of the decision by the defendant, Board of Appeal on Motor Vehicle Liability Policies and Bonds (Board), upholding an insurance premium surcharge imposed by the defendant, Commerce Insurance Company in accordance with the Massachusetts Safe Driver Insurance Plan.[1] See G.L.c. 175, §§113B, 113P (under the Massachusetts Safe Driver Insurance Plan, the plaintiffs insurer, Commerce Insurance Company, was required to make a determination as to whether its insured was more than fifty percent at fault for the accident). The case arises out of a four-vehicle incident on Route 114 in Danvers, Massachusetts.
FACTUAL BACKGROUND
The Board held a hearing on this matter on May 10, 2004. The evidence presented to the Board consisted of the Surcharge Appeal form submitted by the plaintiff in which she states that on August 8, 2002, at approximately 6:00 p.m., she was at a complete stop in traffic on Route 114 in Danvers, Massachusetts when her vehicle was struck from the rear by another vehicle and pushed into a truck in front of her which, in turn, struck a vehicle in front of it. Administrative Record 3-4 (R.). The Board also received in evidence a letter authored by the plaintiff in which she provided a detailed account of this four-car accident. She explains that her vehicle was stopped in traffic. She heard the screeching of brakes from the vehicle behind her. She was struck from the rear and pushed ahead. The air bag in her vehicle deployed. The plaintiff added that she was not interviewed by the police. With regard to the issue of damage, she explained that the bumper of her vehicle did not line up squarely with the bumper of the truck in front of her accounting for the heavy damage to her vehicle and the light damage to the truck. R. 9-10. The Board also had before it a Danvers Police report that describes an accident sequence that is different from the one described by the plaintiff in which the plaintiff is alleged to have struck a vehicle from behind, pushing it into the lead vehicle after which the plaintiff was herself struck from behind by the fourth vehicle. R. 13-15; 18-20; 23-26. There is no indication in this report of the source of the information or the basis for the officer’s conclusion about the accident sequence. The plaintiff was the only witness who testified at the surcharge appeal hearing. R. 36-47. She acknowledged that the front-end damage to her 1996 Toyota vehicle was $8,418, the rear-end damage to the first car in line (a 1979 Mercedes) was $3,827, and the rear-and front-end damage to the Dodge truck (operated by Russo) which was ahead of the plaintiff totaled $2,751. The hearing officer noted there was no evidence of any payment for damage to the owner of the vehicle which the plaintiff maintains struck her (1Q99 Hyundai) (operated by Doucette). R. 37-38. The hearing officer noted that the driver of the Mercedes, Mr. Catalano, reports he was struck from behind while he was stopped. R. 38. At the hearing, the plaintiff once again gave an account of the incident consistent with her earlier statements. R. 41-47.
DISCUSSION
1. The Board’s Decision
The Board issued written findings of fact and conclusions of law. Its findings include the following:
iii) prior to collision, appellant [plaintiff! was traveling too closely behind the other vehicle for the travel speed and existing road conditions, thus creating an immediate hazard to that vehicle; iv) appellant collided with the rear section of the other vehicle; ... vi) the collision occurred on Route 114 in Danvers at approximately 6:00 p.m. The weather *2 was clear and the roads were dry. Appellant was in stop and go traffic when the vehicle in front of her came to a sudden stop. Appellant was unable to stop before colliding with the vehicle in front. Appellant does not feel she is more than 50% at fault because she states she was at a complete stop and the vehicle behind her pushed her into the vehicles in front. Evidence does not support this. Appellant’s air bags deployed, had extensive damage to front end, and witnesses attested to appellant’s vehicle hitting first. The primary cause of the accident was appellant’s following too close.
R. 2.
Based on the above factual findings, the Board concluded that the plaintiff did not exercise due care in the control and operation of her vehicle because she did not maintain a safe and sufficient distance from the vehicle ahead of her. R. 2. The Board reasoned that the “totality of evidence supports the application of the presumption created by Standard of Fault no. 3,” and that plaintiff did not overcome the presumption. Therefore the Board concluded that the surcharge assessment against the plaintiff should be upheld. R 2.
2. Judicial Review of the Board’s Decision
By the express terms of G.L.c. 30A, §14(7), judicial review of an agency decision is limited. The court must confine itself to the record. The court must give deference to the expertise of the agency, and may not substitute its judgment for that of the agency, even if the court would have taken a different view of the evidence and reached a different result. The court must uphold an agency’s decision so long as it is based on findings of fact that are supported by evidence that a reasonable mind would accept as adequate. While the court must give due deference to an agency’s application of its technical expertise, its rulings of law are subject to independent review by the court. Ultimately, the plaintiff bears the burden of establishing that the agency decision is based on insufficient evidence, an error of law, or is arbitraiy and capricious. G.L.c. 30A, §§1(6) and 14(7). See Tri-City v. Acting Deputy, 54 Mass.App.Ct. 405, 407 (2002), and cases cited. See also Merisme v. Board of Appeals on Motor Vehicle Liability Policies & Bonds, 27 Mass.App.Ct. 470, 473 (1989).
The only first-hand account before the Board about what took place on August 8, 2002, at approximately 6:00 p.m. on Route 114 in Danvers, Massachusetts was the testimony by the plaintiff. Her testimony was consistent with earlier written statements by the plaintiff also presented to the Board. In those written statements, the plaintiff makes reference to differing accounts of the collision reportedly expressed by others, but explained that they were simply assumptions and denied their accuracy. See, e.g., R. 9 (“I believe that the vehicle in front of me assumed I had hit him first and then when Gina Doucette heard him; she just went along with that”). The Board also had a copy of a Danvers Police Department report which contains the following statement: “Operator # 1 & #2 stopped for traffic when vehicle three [Plaintiffs vehicle] had contact with [#]2 pushing it into one and then operator four ran into three.” R. 15. The source of and basis for this statement is unknown. What is known, however, is that the police officer who prepared the report did not witness the collision and did not interview the plaintiff. Finally, the Board had a copy of a report by the operator of the Mercedes, vehicle #1, Stephen Catalano, who states that “my vehicle was (sic) stop at red light and was hit in the rear.” R. 26.
In the circumstances of this case, the Board’s decision to reject the first-hand account of the incident offered by the plaintiff that was offered orally in testimony under oath and was fully consistent with earlier written accounts by the plaintiff, and then In that case, a contradictory account on the basis of (1) scant hearsay evidence of uncertain origin, (2) evidence with respect to the deployment of the plaintiffs airbags, and (3) evidence of the damage caused to the plaintiffs vehicle was arbitrary and capricious within the meaning of G.L.c. 30A, §14(7)(g). The Board never explained why it rejected the account given by the plaintiff. The Board did not rest its findings of fact on any technical expertise it might possess. Essentially, the Board substituted a conclusion (the plaintiff did not exercise due care by colliding with the vehicle ahead of her) in the place of factual findings.
What remains to be considered is the regulatory presumption established by the Board as part of its “Standards of Fault.” See 211 C.M.R. §74.04(3) (greater than 50% fault is presumed on the part of an operator who collides with rear end of another vehicle). This presumption is rebuttable. DiLoreto v. Fireman’s Fund Ins. Co., 383 Mass. 243, 248-49 (1981). See Gnanaratnam v. Hanover Insurance Company, Middlesex Superior Court No. CA993973 (August 18, 2000) (Botsford, J.) (12 Mass. L. Rptr. 287). Accord Goggin v. Commerce Ins. Co., Norfolk Superior Court, No. 98-00729 (Dec. 11, 1998) (Doerfer, J.) (9 Mass. L. Rptr. 370) (“[A]n unrebutted presumption of fault is sufficient to meet the substantial evidence standard”) (emphasis added). This case is distinguishable from cases in which the Board’s decision rests on the presumption of fault in circumstances in which there is no credible evidence to the contrary. See, e.g., Morelli v. Metropolitan Property & Cas. Ins. Co., Middlesex Superior Court No. 982172 (Jun. 4, 1999) (Neel, J.) (10 Mass. L. Rptr. 207) (“Further, Morelli had a duty to maintain control of her vehicle and the fact that there was a downpour did not relieve of her of that duly. She did not maintain control of her vehicle and skidded onto the traffic island and hit a sign.”).
This view, it might be said, contravenes the decision in Yazbek v. Board of Appeal on Motor Vehicle Liability Policies and Bonds, 41 Mass.App.Ct. 915 (1996) (re- *3 script). There, the Appeals Court interpreted an earlier version of a Board regulation, 211 C.M.R. §74.03, which provided that “[t]he presumptions [of fault] . . . shall be determinative unless a showing to the contrary is demonstrated by the evidence presented” at the hearing before the Board. In the Appeals Court explained that 211 C.M.R. §74.03 alters the eviden-tiary effect that a presumption of faultwould otherwise have under the familiar “bursting bubble” theory of presumptions generally adhered to in Massachusetts. “[T]he wording of the regulation itself requires not merely the introduction of some contradictory evidence in order to overcome the presumption, but rather that a ‘showing’ contrary to the presumption must be demonstrated.” Id. at 916, citing Diloreto, supra, 383 Mass, at 244-45 & 249 n.5.
The underpinning of the decision in Yazbek, supra, may have been removed by the Board’s adoption of a new version of 211 C.M.R. §74.03. Effective July 1, 1995, that regulation now provides that “[t]he presumption raised as to an operator being more than 50% at fault as described in 211 C.M.R. §74.04 shall be considered determinative unless and until the operator overcomes the presumption by producing sufficient evidence at an initial review or hearing held in accordance with Rules of the Board.” Under this version of 211 C.M.R. §74.03, once the operator introduces “sufficient evidence” i.e., evidence that would support a finding for the operator regardless of whether the Board chooses to credit it, the presumption is not determinative, and may disappear in keeping with the “bursting bubble” theory of presumptions thought to be the default position under our law of evidence.[2] If this view obtains, the Board’s decision is clearly lacking in substantial evidence for the reasons stated above (it is based on unsubstantiated hearsay and speculation about the significance of certain damage to the plaintiffs vehicle). A board decision based simply on the fact of a rear-end collision, without the benefit of the presumption, would not constitute substantial evidence.
Even if the Board’s adoption of a new version of 211 C.M.R. §74.03 does not work a change in the eviden-tiary effect of the Standards of Fault established by 211 C.M. R. 74.04, it does not alter the result in this case. Under the approach followed in Yazbek, supra, the Board has the discretion or authority to base a decision on one of its Standards of Fault in circumstances in which contradictory evidence is offered so long as it specifically rejects that contradictory evidence or regards it as insufficient. Thus, in Yazbek, supra, 41 Mass.App.Ct. 915, the Appeals Court specifically noted that the Board “weighed the credibility of the insured as a witness against the evidentiary presumption,” and disbelieved the insured. In the present case, however, the Board gave specific but inadequate reasons for rejecting the plaintiffs testimony: “Appellant’s air bags deployed, had extensive damage to front end, and witnesses attested to appellant’s vehicle hitting first. The primary cause of the accident was appellant’s following too close.” R. 2. The Board did not explain how any technical expertise it might have warranted an inference that the plaintiff was not credible because her vehicle’s airbags deployed. The Board did not explain how any technical expertise it might have warranted an inference that the plaintiff was not credible because her vehicle had extensive damage to the front end. And, the Board had no credible evidence in the form of other contradictory witness accounts. The deference that this court must show to administrative agency decisions does not require the court to uphold a decision that arbitrarily rejects the testimony of a motor vehicle operator about the facts associated with a motor vehicle collision and rests on the presumption of fault arising under 211 C.M.R. §74.04(3) (greater than 50% fault is presumed on the part of an operator who collides with rear end of another vehicle). See Gnanaratnam v. Hanover Insurance Company, Middlesex Superior Court No. CA993973 (August 18, 2000) (Botsford, J.) (12 Mass. L. Rptr. 287).
ORDER
For the above reasons, the decision of the Board of Appeal on Motor Vehicle Policies and Bonds is reversed, and the matter is remanded to the Board of Appeal on Motor Vehicle Policies and Bonds with instructions that the surcharge assessed against Judi M. Scipione arising out of the motor vehicle collision on August 8, 2002 on Route 114 in Danvers, Mass, should not be applied.

General Laws c. 175, §113B establishes a Safe Driver Insurance Plan which provides for driver classifications and insurance premium adjustments based on an insured’s driving record. Under this plan, an at-fault accident constitutes a surchargeable incident. G.L.c. 175, §113B. Accordingly, insurers of motor vehicles in Massachusetts are required to impose merit rating surcharges on insured drivers who are more than fifty percent at fault in causing a motor vehicle accident.” See Goggin v. Commerce Insurance Company, Norfolk Superior Court, No. 98-00729 (Dec. 11, 1998] (Doerfer, J.) (9 Mass. L. Rptr. 370).

“Under this theory, if evidence rebutting the presumption-dependent factual conclusion is introduced, the presumption disappears and the fact finder is left to decide whether that conclusion is to be inferred from the basic fact upon which the presumption was dependent, or whether to credit the rebuttal evidence. See Hughes, Evidence §44 (Supp. 1993). See also Liacos, Massachusetts Evidence §5.8.5 (6th ed. 1994 and Supp. 1995); IX Wigmore, Evidence §§2493a & 2493g (Chadbourn rev. 1981 &Supp. 1996). For a discussion of the academic debate attending the application of presumptions, see Hecht & Pinzler, Rebutting Presumptions: Order Out of Chaos, 58 B.U.L. Rev. 527 (1978).” Yazbek, supra, 41 Mass.App.Ct. 915 n.4. Thus, under Massachusetts law, absent legislation or a regulation to the contraiy, a presumption “disappears” when contraiy evidence is introduced. See Krantz v. John Hancock Mut Ins. Co., 335 Mass. 703, 712 (1957); Thomas Meyer Store Inc., 268 Mass. 587, 589 (1929); Duggan v. Bay State St. Ry. Co., 230 Mass. 370, 378 (1918), cited by L. Shubow & H. Alperin, Summary of Basic Law §13.56 (14B Mass. Prac. 1996). See also Beck v. People's Service Insurance Company, Norfolk Superior Court No. *4 9602289 (Jul. 22, 1997) (Cowin, J.) (7 Mass. L. Rptr. 364). While the regulation in question, 211 C.M.R. §74.03 does not declare that the presumption of fault disappears as soon as any evidence to the contrary is introduced, neither does it declare that the presumption survives in a case such as this in which substantial evidence to the contrary is introduced by the operator.