# IN THE SUPREME COURT OF IOWA

No. 06–0049

Filed May 29, 2009

**STATE OF IOWA,**

Appellee,

vs.

**LARRY GENE DUDLEY, SR.,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Wayne County, David L. Christensen, Judge.

Acquitted indigent defendant appeals from orders requiring him to reimburse the State for the costs of his court-appointed attorney. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; AND CASE REMANDED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas W. Andrews, Assistant Attorney General, and Alan M. Wilson, County Attorney, for appellee.

**TERNUS, Chief Justice.**

The appellant, Larry Dudley, appeals from postacquittal orders requiring him to reimburse the State for the cost of legal assistance provided at public expense. The court of appeals held these orders and the statute pursuant to which they were entered, Iowa Code section 815.9 (2005), did not violate the defendant's Sixth Amendment right to counsel, the equal protection and due process guarantees of the United States Constitution, or the debtor's clause of the Iowa Constitution. The court of appeals also rejected Dudley's claim he was denied the effective assistance of counsel because his attorney failed to object to certain aspects of the court-ordered payment plan, concluding Dudley was not entitled to counsel for postacquittal proceedings.

We granted Dudley's application for further review. Upon our consideration of the issues, we hold the court's failure to consider Dudley's ability to reimburse the State for the costs of his defense infringed his Sixth Amendment right to counsel. In addition, we conclude Dudley's right to equal protection was violated in two ways: (1) the court-ordered repayment plan effectively deprived Dudley of the statutory exemptions from execution on civil judgments that are available to other civil judgment debtors; and (2) chapter 815 restricts the restitution obligation of a convicted defendant represented by a public defender to a statutory fee, but not the repayment or restitution obligation of all other indigent defendants, including acquitted defendants such as Dudley. We also conclude the district court erroneously included the statutory court reporter fee in the sum Dudley was required to repay. Finally, we find no due-process violation under the facts of this case. Based on our determination that Dudley's constitutional rights were violated, we vacate the court of appeals

decision, reverse the district court judgment, and remand the case for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

In October 2004, appellant, Larry Dudley, was charged with a criminal offense. Based on his indigency, the district court appointed counsel to defend him. A jury found Dudley not guilty of the criminal charge, and on November 8, 2005, the court dismissed the case.

On November 22, the district court *sua sponte* made a calendar entry in the criminal case requiring Dudley to reimburse the State for the total costs of his legal assistance on or before November 30. *See* Iowa Code § 815.9(4) (providing that costs of legal assistance "shall become due and payable . . . within thirty days of the acquittal or dismissal"). The court further stated that, if the costs were not paid by this date, a judgment would be entered against Dudley for any unpaid amounts. *See id.* § 815.9(9) (requiring judgment for any unpaid costs of legal assistance be entered against person acquitted).

Dudley's defense counsel filed a motion requesting a hearing on the legality of the court's order and an alternative request for a monthly payment plan. *See id.* § 815.9(7) (requiring court to order payment of costs "in reasonable installments" if not paid within thirty days of acquittal or dismissal). Among other arguments not pertinent to this appeal, Dudley claimed Iowa Code section 815.9 violated his Sixth Amendment right to counsel, his due process and equal protection rights under the United States Constitution, and the debtor clause of the Iowa Constitution. An evidentiary hearing was held on Dudley's motion at which Dudley testified to his limited financial resources and introduced supporting documentation. The court subsequently entered a written ruling overruling all constitutional challenges, entering judgment against

Dudley for all costs of legal assistance, and ordering him to pay the judgment at the rate of $200 per month. A contemporaneous "Fine Payment Plan Order" set forth a schedule for payment and notified Dudley that, if he failed to pay the judgment in full, he would be ordered to appear before the court to show why he should not be held in contempt.

Dudley filed this appeal, and the case was transferred to the court of appeals. The court of appeals rejected Dudley's claims, as described above. This court granted further review.

## II. Scope of Review.

Our review of constitutional claims is de novo. *In re Det. of Morrow*, 616 N.W.2d 544, 547 (Iowa 2000). To the extent we are required to engage in statutory construction, our review is for correction of errors at law. *State v. Sluyter*, 763 N.W.2d 575, 579 (Iowa 2009).

## III. Overview of Statutory Scheme.

Section 815.9 provides for the appointment of counsel at state expense for indigent defendants. *See* Iowa Code § 815.9(1)(*a*). It also imposes a repayment obligation on indigent defendants for the cost of legal assistance provided by the State. *Id.* § 815.9(3). All costs and fees incurred for legal assistance are due and payable not later than the date of sentencing for convicted defendants and within thirty days of acquittal or dismissal for acquitted defendants. *Id.* § 815.9(4). If the costs of defense are not paid within the required period, the court is required to "order payment of the costs and fees in reasonable installments" and to enter "a judgment . . . against the person for any unpaid amounts." *Id.* § 815.9(7), (9). Other relevant provisions of the statutes governing indigent defendants' reimbursement and restitution obligations will be discussed in connection with the issue to which they are pertinent.

**IV. Issues.**

**A. Right to Counsel.** Dudley argues the mandatory reimbursement obligation imposed on acquitted defendants without any consideration of their ability to pay infringes on such defendants' constitutional right to counsel in the criminal proceeding. He asserts indigent defendants will be discouraged from accepting the services of court-appointed counsel if faced with the prospect of having to pay for the costs of legal defense without regard to whether they have the means to do so. As a result, he claims, the statute has a chilling effect on indigent defendants' exercise of their constitutional right to counsel.

**B. Equal Protection Claim.** Dudley contends various aspects of the cost recovery scheme of chapter 815 violate the Equal Protection Clause of the United States Constitution. Only one of these claims was preserved for review: that indigent defendants as a class are treated less favorably than other civil judgment debtors.[1] Dudley's two other equal-protection arguments were not raised below. Therefore, we address the latter two issues within his ineffective-assistance-of-counsel claim. *See State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002).

**C. Ineffective Assistance of Counsel.** Dudley also makes a claim of ineffective assistance of counsel, identifying three arguments he believes his trial counsel should have made in the postacquittal proceedings. First, he contends his attorney should have raised two

---

[1]In the district court, Dudley's trial attorney challenged the chapter 815 reimbursement scheme on equal-protection grounds, alleging a "defendant accepting court appointed counsel [is] exposed to more severe collection practices than the ordinary civil debtor." He argued, therefore, that the court could not constitutionally enter a cost judgment against Dudley. On appeal, Dudley has abandoned this broad claim and challenges only the payment plan that would require Dudley to use exempt assets to make the payments. Dudley has raised the narrower claim on appeal as an ineffective-assistance-of-counsel claim. In fairness to trial counsel, we think Dudley adequately preserved error on this issue. Therefore, we address this issue directly.

additional equal-protection claims. Those claims are: (1) indigent defendants represented by a public defender are treated more favorably in the form of reduced attorney fees than indigent defendants represented by a private attorney who has contracted with the public defender to provide services to indigent defendants, and (2) indigent defendants who are acquitted are treated less favorably with respect to their repayment obligations than indigent defendants who are convicted. Finally, Dudley also argues his counsel had a duty to object to the improper inclusion of a court reporter fee in the costs assessed against him.

The State asserts that postacquittal proceedings under chapter 815 are civil in nature, and therefore, Dudley had no right to counsel in those proceedings. As a consequence, the State contends, Dudley has no basis for an ineffective-assistance claim.

**D. Due Process.** Dudley also challenges the recoupment statute on state and federal due process grounds. He asserts indigent defendants are not given adequate notice at the time counsel is appointed of their mandatory reimbursement obligation. In addition, he argues section 815.9 violates the Due Process Clause because it provides no opportunity for a hearing on the amount of the costs of legal assistance prior to entry of the recoupment order and judgment.

**E. Debtor's Clause.** Dudley's final constitutional challenge to section 815.9 is based on the debtor clause of the Iowa Constitution. *See* Iowa Const. art. I, § 19 ("No person shall be imprisoned for debt in any civil action, on mense or final process, unless in case of fraud[.]"). He asserts the use of contempt to enforce a chapter 815 cost judgment, as was threatened by the court in this case, violates the debtor clause. This claim presupposes that contempt proceedings may be used against an

acquitted indigent defendant who fails to pay the costs of legal assistance. We have recently held that a district court has no authority to invoke its power of contempt to enforce a judgment entered against an acquitted indigent defendant under chapter 815. *Sluyter,* 763 N.W.2d at 585. Because it is now established that the court cannot use its contempt power to enforce the judgment it entered against Dudley and because we are confident the court will not do so in light of our *Sluyter* decision, we do not address Dudley's debtor-clause challenge.

### V. Infringement on Right to Counsel.

Dudley claims the mandatory reimbursement required by section 815.9 chills the exercise of his constitutional right to counsel. *See* U.S. Const. amend. VI; Iowa Const. art. I, § 10. He argues a defendant faced with the prospect of having to repay the State for the costs of court-appointed counsel may choose to decline the services of an attorney. The State contends similar claims have been rejected by the United States Supreme Court and this court. *See Fuller v. Oregon,* 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974); *State v. Haines,* 360 N.W.2d 791 (Iowa 1985).

In *Fuller,* a convicted defendant argued the repayment obligation imposed upon him by an Oregon statute chilled his exercise of his Sixth Amendment right to counsel. 417 U.S. at 51, 94 S. Ct. at 2123, 40 L. Ed. 2d at 653. The Court rejected this claim, stating:

> The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel. *The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work "manifest hardship" are forever exempt from any obligation to repay.*

*Id.* at 53, 94 S. Ct. at 2124, 40 L. Ed. 2d at 654 (emphasis added).

Iowa addressed a similar claim with a similar resolution in *Haines.* In that case, the defendant was convicted and ordered to repay the county for the fees of his court-appointed attorney as a condition of probation. 360 N.W.2d at 792. He challenged that part of his sentence ordering repayment of the costs of his legal representation, claiming it violated the constitutional provisions guaranteeing his right to counsel. *Id.* at 793. Relying on *Fuller*, this court held the restitution statute did not infringe on the defendant's right to counsel. *Id.* at 794. We focused on Iowa Code chapter 910, which authorizes the inclusion of court-appointed attorney fees in a convicted defendant's restitution obligation, noting the Iowa statute, like the Oregon statute, authorized repayment of attorney fees only " 'to the extent that the offender is reasonably able to do so.' " *Id.* (quoting Iowa Code § 910.2 (Supp. 1983)). We further pointed out that chapter 910 provides the additional protection of making the restitution plan subject to modification when circumstances dictate, for example, "if a probationer later becomes unable to meet the plan of restitution." *Id.*

We find these cases inapposite because an *acquitted* defendant does not have the same safeguards afforded a convicted defendant under Iowa law. The restitution procedures and standards of chapter 910 do not apply to an acquitted defendant such as Dudley. *See Goodrich v. State*, 608 N.W.2d 774, 776 (Iowa 2000) (holding provisions of chapter 910 apply only to "a criminal restitution order"). Moreover, the statute governing Dudley's repayment obligation, chapter 815, contains no requirement for a preliminary determination that a defendant has the financial means to reimburse the State. Although a *payment plan* is limited to "reasonable installments," *see* Iowa Code § 815.9(7), that

provision does not affect the amount of the *judgment*. Therefore, under the statutory scheme governing the obligations of acquitted defendants, an acquitted defendant will be charged with the full expense of his legal assistance without regard to whether he will ever have the funds or means to pay the judgment. The very safeguard that sustained the constitutionality of the recoupment statutes applied to convicted defendants in *Fuller* and *Haines* is absent here. *See Haines*, 360 N.W.2d at 797 ("It is this 'reasonably able to pay' standard which allows section 910.2 to withstand constitutional attack.").

We conclude chapter 815.9, as applied to acquitted defendants, infringes on their federal and state right to counsel. *See Olson v. James,* 603 F.2d 150, 155 (10th Cir. 1979) (stating court may not constitutionally order a defendant to repay court-appointed attorney fees "unless he is able to pay them or will be able to pay them in the future considering his financial resources" and concluding statute that made repayment mandatory without regard to ability to pay had chilling effect on defendant's right to counsel); *Fitch v. Belshaw*, 581 F. Supp. 273, 277 (D. Or. 1984) (holding statute that imposed repayment obligation without any procedure to determine defendant's ability to pay "unconstitutionally chills an indigent defendant's exercise of Sixth Amendment right to counsel"); *State v. Tennin*, 674 N.W.2d 403, 410–11 (Minn. 2004) (holding Minnesota mandatory recoupment statute violated defendant's state and federal right to counsel). A cost judgment may not be constitutionally imposed on a defendant unless a determination is first made that the defendant is or will be reasonably able to pay the judgment. *See Hanson v. Passer*, 13 F.3d 275, 279 (8th Cir. 1994) (stating "when court-appointed counsel is provided, it is constitutionally permissible to require the defendant to repay the expense incurred by the state in providing the

representation if the defendant later becomes able to repay, so long as '[t]hose who remain indigent or for whom repayment would work "manifest hardship" are forever exempt from any obligation to repay' " (quoting *Fuller*, 417 U.S. at 53, 94 S. Ct. at 2124, 40 L. Ed. 2d at 654)); *State v. Drayton*, 175 P.3d 861, 880 (Kan. 2008) (noting statutory requirement that repayment be ordered only when defendant had ability to pay was included in statute to satisfy constitutional requirements); *State v. Ellis*, 167 P.3d 896, 900 (Mont. 2007) (upholding constitutionality of state recoupment statute because it provided that "a court may not sentence a defendant to pay the costs of court-appointed counsel unless the court determines the defendant is or will be able to pay them"); *State v. Morgan*, 789 A.2d 928, 931 (Vt. 2001) (holding "that, under the Sixth Amendment to the United States Constitution, before imposing an obligation to reimburse the state, the court must make a finding that the defendant is or will be able to pay the reimbursement amount ordered"). Because that determination was not made here, we reverse the judgment entered against Dudley and remand for a hearing on his reasonable ability to pay the costs of his legal assistance. *See In re Attorney Fees in State v. Helsper*, 724 N.W.2d 414, 418–20 (Wis. Ct. App. 2006) (reversing repayment order because Wisconsin recoupment statute did not require determination of reasonable ability to pay, but allowing state to seek another order consistent with the constitutional requirement that prior to entry of order a hearing be held on the defendant's ability to pay).

Although the judgment against Dudley must be reversed, we will address the other issues in this appeal that are likely to arise upon remand. We first consider the equal-protection claim preserved for our review.

**VI.  Equal Protection.**

**A.  General Principles.**  "The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from 'deny[ing] to any person within its jurisdiction the equal protection of the laws.' "  *Sanchez v. State*, 692 N.W.2d 812, 817 (Iowa 2005) (quoting U.S. Const. amend. XIV, § 1).  Because the statute governing recoupment of the costs of legal assistance does not affect a fundamental right or classify on the basis of race, alienage, national origin, gender, or legitimacy, it is subject to a rational-basis review.  *Id.* Under this level of scrutiny, the statute " 'will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' "  *Id.* (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313, 320 (1985)).  "A classification is reasonable if it is ' "based upon some apparent difference in situation or circumstances of the subjects placed within one class or the other which establishes the necessity or propriety of distinction between them." ' "  *State v. Mann*, 602 N.W.2d 785, 792 (Iowa 1999) (quoting *Chicago Title Ins. Co. v. Huff*, 256 N.W.2d 17, 29 (Iowa 1977)).

A fundamental principle of equal-protection law is "that similarly-situated persons be treated alike."  *In re Det. of Morrow*, 616 N.W.2d at 548.  In the past, we have applied this principle as "a narrow threshold test."  *Varnum v. Brien*, 763 N.W.2d 862, 882 (Iowa 2009).  If a plaintiff cannot show preliminarily that persons in the two classes are similarly situated, we have concluded the court need not determine whether there is a constitutionally adequate basis for the persons' different treatment. *Id.*  As we noted in *Varnum*, this court has had difficulty applying this threshold test in a principled manner, sometimes "directly or indirectly infus[ing] [our] analysis with principles traditionally applied in the

complete equal protection analysis." *Id.* at 884 n.9. This difficulty is attributable to the inescapable relationship between the threshold test and the ultimate scrutiny of the legislative basis for the classification: "the equal protection guarantee requires that laws treat all those who are similarly situated *with respect to the purposes of the law* alike." *Id.* at 883. Once the purposes of the law are considered in determining whether persons in the differently treated classes are similarly situated, the distinction between the threshold test and the ultimate identification and examination of the purposes of the law becomes blurred.

In *Varnum,* a case applying the Iowa Constitution, we left for another day whether the threshold test has any value. *Id.* at 884 n.9. For the present case, it is enough to note that the United States Supreme Court has not employed "similarly situated" as a threshold test under the Federal Constitution. *See id.* Because Dudley's equal-protection claim is made only under the United States Constitution, we need not address whether the persons treated differently by the statute are similarly situated.

**B. Classification of Indigent Defendants Versus Other Civil Judgment Debtors.** The district court ordered a payment plan requiring Dudley to pay $200 a month on the cost judgment. Dudley testified at the hearing that his sole source of income was a social security benefit, funds that would be exempt from execution for an ordinary civil judgment debtor. *See* Iowa Code § 627.6(8)(*a*). Dudley argues section 815.9 violates the Equal Protection Clause because it fails to afford acquitted defendants the protections granted other civil judgment debtors. *See generally Sluyter*, 763 N.W.2d at 582 (stating cost judgment entered against acquitted defendant creates a civil liability).

A nearly identical issue was addressed by the United States Supreme Court in *James v. Strange*, 407 U.S. 128, 92 S. Ct. 2027, 32 L. Ed. 2d 600 (1972). The Kansas statute at issue in that case required indigent defendants to repay the state for the amounts expended for their defense. *James*, 407 U.S. at 131, 92 S. Ct. at 2029, 32 L. Ed. 2d at 605. A convicted defendant challenged the statute on the ground it did not afford defendants the same exemptions granted to other civil judgment debtors. *Id.* at 131, 92 S. Ct. at 2030, 32 L. Ed. 2d at 605. The Supreme Court held the statute violated the Equal Protection Clause. *Id.* at 140–41, 92 S. Ct. at 2034, 32 L. Ed. 2d at 610. Notwithstanding the fact that all indigent defendants were treated alike, the Court concluded there was no rational basis to deny to this class of debtors the protections that were available to other persons burdened with a civil judgment. *Id.* The Court rejected any notion that different treatment was permissible simply because the judgment was in favor of the government, stating "a State may [not] impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor." *Id.* at 138, 92 S. Ct. at 2033, 32 L. Ed. 2d at 609. With respect to acquitted defendants, the Court observed: "It is difficult to see why such a defendant, adjudged to be innocent of the State's charge, should be denied basic exemptions accorded all other judgment debtors." *Id.* at 139, 92 S. Ct. at 2034, 32 L. Ed. 2d at 609.

Chapter 815, unlike the Kansas statute, does not *expressly* deprive acquitted indigent defendants of the benefit of the exemptions available to civil judgment debtors. Nonetheless, the court's authority under section 815.9(7) to order payment in reasonable installments is unrestricted and allows circumvention of the protections provided by our statutes governing execution on a civil judgment. The effect, therefore, is

to deny to acquitted defendants the protection of the exemptions available to civil judgment debtors, which is exactly what occurred in this case.

For the reasons discussed in *James*, the different treatment of acquitted defendants such as Dudley as compared to ordinary civil judgment debtors violates the Equal Protection Clause. *See Alexander v. Johnson*, 742 F.2d 117, 124 (4th Cir. 1984) (holding for recoupment statute to pass constitutional muster, it must not expose defendant accepting court-appointed counsel "to more severe collection practices than the ordinary civil debtor"). Upon remand, any payment plan must not deprive Dudley of the protections to which other civil judgment debtors would be entitled.[2]

As noted above, Dudley's other equal-protection challenges were not preserved for our review. Whether we can address them within the context of an ineffective-assistance-of-counsel claim depends on whether Dudley had a right to counsel for the postacquittal proceedings. We turn to that issue now.

## VII.  Right to Court-Appointed Counsel.

"Without a right to counsel, [a defendant] also has no commensurate right to effective assistance from that counsel." *White v. Schotten*, 201 F.3d 743, 752 (6th Cir. 2000), *overruled on other grounds by Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005). Consequently, before we may consider Dudley's ineffective-assistance-of-counsel claims, we must determine whether he even had a right to counsel in these

_____

[2]We express no opinion whether a payment plan requiring Dudley to make installment payments from nonexempt assets would pass constitutional muster. Dudley's challenge was focused on the exempt nature of the assets he had available to make the payments ordered by the court. He did not challenge on appeal the constitutionality of the court's authority to order payment outside the statutory parameters governing the collection of other civil judgments.

postacquittal proceedings. Dudley claims he has a right to counsel in chapter 815 postacquittal proceedings because the actions of the court in imposing the cost judgment are "an extension of the criminal proceedings."

The Iowa Constitution provides: "In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right . . . to have the assistance of counsel." Iowa Const. art. I, § 10. A procedure to implement this constitutional right for indigent defendants is set out in Iowa Code chapter 815.

Section 815.9 provides that an indigent defendant "is entitled to an attorney appointed by the court." Iowa Code § 815.9(1). The court is authorized to appoint an attorney "to represent an indigent defendant at any stage of the criminal . . . proceedings . . . in which the indigent defendant is entitled to legal assistance at public expense." *Id.* § 815.10(1). For purposes of the Iowa Code of Criminal Procedure, of which chapter 815 is a part, the legislature has defined "prosecution" as "the commencement, including the filing of a complaint, and continuance of a criminal proceeding, and pursuit of that proceeding to final judgment on behalf of the state." *Id.* § 801.4(13).

Reading these statutory provisions together, as we must, *see Sluyter*, 763 N.W.2d at 581, we conclude the legislature intended to extend the right to counsel enjoyed by a defendant charged with a criminal offense through the conclusion of the criminal proceeding by judgment. We reach this conclusion because the legislature has provided for court-appointed counsel for indigent defendants "at any stage" of the criminal proceeding "in which the indigent defendant is entitled to legal assistance at public expense." Iowa Code § 815.10(1). Under the Iowa Constitution, a person is entitled to the assistance of

counsel in "all criminal prosecutions." Iowa Const. art. I, § 10. The legislature has defined "prosecution" for purposes of chapter 815 as a criminal proceeding from commencement by filing a complaint "to final judgment on behalf of the state." Iowa Code § 801.4(13). We must determine, then, whether the postacquittal proceedings that are the subject of this appeal occurred prior to "final judgment on behalf of the state." *Id.*

The legislature chose to make the process for obtaining reimbursement for the costs of legal assistance part of the criminal case. The State is not required to initiate a separate suit against a person acquitted of criminal charges to recover these costs. Rather, "all costs and fees incurred for legal assistance" automatically become "due and payable to the clerk of the district court by the person receiving the legal assistance . . . within thirty days of the acquittal or dismissal." *Id.* § 815.9(4). If the costs and fees are not paid within this time frame, the court is required to enter judgment against the person for any unpaid amounts. *Id.* § 815.9(9). This process takes place entirely in the context of the criminal case.

Under this statutory scheme, as applied to an acquitted defendant, the "final judgment on behalf of the state" in the criminal proceeding is the cost judgment entered against the acquitted person in favor of the state. Therefore, under the definition of "prosecution" applicable to chapter 815, the criminal prosecution includes the postacquittal proceedings. We conclude these statutory provisions evidence a legislative intent to extend a defendant's right to counsel to these postacquittal proceedings.[3] *Cf. White*, 201 F.3d at 745, 752–53 (holding

---

[3]We express no opinion on whether article I, section 10 of the Iowa Constitution would require the appointment of counsel to represent acquitted defendants in postacquittal proceedings to assess the cost of legal assistance in the absence of section

that, because Ohio law required ineffective-assistance-of-counsel claims be raised in an application to reopen the direct appeal of the criminal case, such claims were part of the direct appeal, entitling defendant to the assistance of counsel); *State v. Jones*, 964 P.2d 398, 402 (Wash. Ct. App. 1998) (holding because Washington statute provided for acquitted defendant's recovery of attorney fees by motion in criminal action rather than in independent civil action, postacquittal attorney fees and costs were incurred in defense of criminal action and therefore subject to reimbursement).

Our interpretation of the governing statutes as applied to acquitted defendants is consistent with our interpretation of the same and related statutes governing orders requiring a convicted defendant to make restitution for court-appointed attorney fees. In *State v. Alspach*, 554 N.W.2d 882 (Iowa 1996), a convicted indigent defendant demanded court-appointed counsel to assist in challenging a restitution order for attorney fees paid for his defense. *Alspach*, 554 N.W.2d at 882–83. Because the amount of the fees was not known at sentencing, the restitution order requiring payment of the fees was entered several months after the defendant had been sentenced. *Id.* at 883. The district court denied the defendant's request for court-appointed counsel to challenge this supplemental order, ruling "the amount of restitution was a civil matter." *Id.* Relying on the "expansive" language of Iowa Rule of Criminal Procedure 26(1) and Iowa Code section 815.9(10) that an indigent person is entitled to court-appointed counsel "at every stage" of

815.9 and the definition of "prosecution" adopted by the legislature for purposes of indigent defense. While the legislature may not restrict the protections given by the constitution, it is certainly at liberty to expand those protections by statute. Whether chapter 815 is coextensive with the constitutional right to counsel or is more expansive is an issue we do not address.

the criminal proceeding, we concluded the defendant was entitled to court-appointed counsel to challenge the supplemental restitution order.[4]   *Id.* at 882–83.   The postsentencing timing of the order was deemed of no consequence:  "the mere fortuity of whether restitution figures were available at sentencing [should not] determine an indigent defendant's right to appointed counsel on restitution issues."  *Id.* at 884. The court pointed out, however, that should the defendant at some later time initiate an action pursuant to Iowa Code section 910.7, which authorizes actions by convicted defendants to modify a restitution plan, the defendant would not be entitled to appointed counsel for that proceeding because such a "suit is civil in nature and not part of the criminal proceedings."[5]   *Id.*; *see also* Iowa Code § 910.7 (allowing a convicted defendant to "petition the court on any matter related to the plan of restitution").

The reasoning of *Alspach* supports our conclusion here.  The cost judgment against Dudley, which is akin to the restitution order

---

[4]Although we have referred to our *Alspach* decision as setting forth "criminal due process requirements," *State v. Blank*, 570 N.W.2d 924 (Iowa 1997), our determination in *Alspach* of *when* those "due process requirements" must be accorded was not constitutionally based.  The State argued in *Alspach* that a defendant's right to counsel under federal constitutional principles "arises 'only when, if he loses, he may be deprived of his physical liberty.' "  554 N.W.2d at 883 (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24, 101 S. Ct. 2153, 2158, 68 L. Ed. 2d 640, 648–49 (1981)).  We concluded that principle was not determinative, observing that "[o]ur *rules* make no such distinction."  *Id.* (emphasis added).

[5]This court clarified its *Alspach* decision in *Blank*.  We held that, while the timing of the court's supplemental order would not affect a defendant's right to counsel, the timing of the defendant's challenge of that order would.  *Blank*, 570 N.W.2d at 926. We stated a defendant could challenge a supplemental order by a timely appeal or by filing a petition pursuant to section 910.7.  *Id.*  If the petition under section 910.7 is filed within thirty days of the supplemental order, it would be considered an extension of the criminal proceedings, and the defendant's right to counsel would be preserved. *Id.*  If the defendant filed a section 910.7 proceeding more than thirty days after the supplemental order, "the action would be civil, not criminal, in nature," and the defendant would forfeit his right to counsel.  *Id.*

challenged in *Alspach*, was entered in the criminal proceeding, not in a separate action by the State to recover the costs of legal assistance. Therefore, the entry of this judgment was a "stage" of the criminal proceeding for which Dudley was entitled to counsel.

Our characterization of the cost judgment in *Sluyter* as a *civil* liability does not alter our conclusion. *See Sluyter*, 763 N.W.2d at 582 (stating cost judgment entered against acquitted defendant creates a civil liability). As previously noted, the legislature has injected this matter, which would ordinarily be civil, in a criminal action and provided for counsel throughout the criminal prosecution, ending with judgment on behalf of the State. We think it proper to focus on the legislative intent evidenced by these statutes, rather than on the label attached to the final judgment. *See Jones*, 964 P.2d at 403 (holding postacquittal proceedings were part of criminal case notwithstanding that they resulted in a reimbursement award that was civil in nature, stating legislative intent was more important than labels). Because the criminal case did not end, by definition, until the cost judgment had been entered against Dudley and in favor of the State, Dudley was entitled to counsel for the postacquittal proceedings.

It is axiomatic that, when the appointment of counsel is mandated, counsel is required to be effective. *See Dunbar v. State*, 515 N.W.2d 12, 14 (Iowa 1994); *In re Interest of J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988). Therefore, we now consider whether Dudley's trial counsel rendered ineffective assistance.

**VIII.  Ineffective Assistance of Counsel.**

To prevail on an ineffective-assistance-of-counsel claim, the defendant must prove the following elements by a preponderance of the evidence:  (1) trial counsel failed to perform an essential duty, and (2)

prejudice resulted from counsel's failure. *State v. Ceaser*, 585 N.W.2d 192, 195 (Iowa 1998). We will address such claims on direct appeal only if we determine the development of an additional factual record would not be helpful and one or both of these elements can be decided as a matter of law. *State v. Tesch*, 704 N.W.2d 440, 450 (Iowa 2005); *State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004).

To prove the first prong of this claim, the defendant must show the attorney's performance fell outside the normal range of competency. *Ceaser*, 585 N.W.2d at 195. Starting "with the presumption that the attorney performed his duties in a competent manner," "we measure counsel's performance against the standard of a reasonably competent practitioner." *State v. Maxwell*, 743 N.W.2d 185, 195–96 (Iowa 2008). Although counsel is not required to predict changes in the law, counsel must "exercise reasonable diligence in deciding whether an issue is 'worth raising.'" *State v. Westeen*, 591 N.W.2d 203, 210 (Iowa 1999) (quoting *State v. Schoelerman*, 315 N.W.2d 67, 72 (Iowa 1982)). In accord with these principles, we have held that counsel has no duty to raise an issue that has no merit. *State v. Schaer*, 757 N.W.2d 630, 637 (Iowa 2008). The second prong—prejudice—exists "when it is 'reasonably probable that the result of the proceeding would have been different.'" *Id.* at 638 (quoting *State v. Henderson*, 537 N.W.2d 763, 765 (1995)).

Because counsel has no duty to raise issues that have no merit, we will first determine whether Dudley's underlying claims have any validity. If his constitutional challenges are meritorious, we will then consider whether reasonably competent counsel would have raised these issues and, if so, whether Dudley was prejudiced by his counsel's failure to do so. We begin with Dudley's equal-protection claims.

**A. Equal Protection.** Dudley asserts his counsel should have challenged two classifications made by the statute: (1) indigent defendants represented by a contract attorney are required to pay attorney fees that exceed the statutory fee limitations, whereas indigent defendants represented by a public defender are not required to pay fees above the limitations; and (2) indigent defendants who are acquitted are treated less favorably than indigent defendants who are convicted because the latter are required to pay the costs of legal assistance only if reasonably able to pay and have the option of performing community service in lieu of payment. We address these claims separately.

1. *Indigent defendants represented by contract attorneys versus indigent defendants represented by public defender.* Dudley contends his counsel's equal-protection challenge to chapter 815 should have included a claim that the statute treats indigent defendants who are represented by a contract attorney less favorably than indigent defendants who are represented by a public defender. According to Dudley, a person with a contract attorney is required to repay all costs of legal assistance, including any approved attorney fees above the fee limitation. *See generally* Iowa Code § 13B.4(4)(*a*) (requiring state public defender to "establish fee limitations for particular categories of cases"); Iowa Admin. Code r. 493—12.6(1) (establishing fee limitations). On the other hand, the restitution obligation of a convicted defendant who is represented by a public defender is limited to an amount that does not exceed the fee limitations. *See* Iowa Code § 815.14 (capping "restitution" obligation of defendant represented by the public defender at statutory fee). The State correctly points out that only convicted defendants benefit from section 815.14, as only convicted defendants must make restitution. Therefore, the two classes subjected to different treatment by

chapter 815 are convicted defendants represented by a public defender and all other indigent defendants, acquitted and convicted, represented by court-appointed counsel.

In the present case, Dudley was represented by a contract attorney whose fees exceeded $11,000. Dudley was ordered to repay this amount plus other costs of his defense. Had Dudley been represented by a public defender and been convicted, his restitution obligation for the costs of his court-appointed attorney would have been subject to the $1000 fee limitation for class "D" felonies in effect at that time. The issue, then, is whether there is a rational basis for recovering from an acquitted defendant the full charge for the legal services made available to him while a convicted defendant's restitution for the cost of a public defender is circumscribed by the fee limitation provision.

In attempting to justify this differential treatment, the State argues public defenders handle a large volume of cases, and it would be inefficient to require them to seek court approval to continue to work on cases when they had exceeded the fee limitation based on hourly rates. *See* Iowa Code § 815.10A(3) ("An attorney shall obtain court approval prior to exceeding the fee limitations established by the state public defender pursuant to section 13B.4."). The State notes such approval "would be superfluous" since the potential for fiscal abuse is largely nonexistent when the case is assigned to a public defender. This argument is nonsensical, however, because by the State's own admission, when a defendant is acquitted, the State may collect the full cost of the public defender from the acquitted defendant, presumably notwithstanding the absence of prior court approval. *See id.* § 815.9(6) (requiring public defender to report "the total hours of service plus other expenses" and imposing no approval requirement). Consequently, if it is

practical to compute the full cost of the public defender for purposes of ordering payment by acquitted defendants, it would be equally practical to do so for convicted defendants. Therefore, the different treatment of an acquitted defendant represented by a contract attorney and a convicted defendant represented by a public defender cannot rest on the alleged inefficiency in requiring public defenders to seek court approval to exceed the fee limitations since such approval is unnecessary and not required.

The State also contends the convicted defendant is necessarily in a different position than the acquitted defendant because the convicted defendant is headed to prison, severely reducing his ability to pay any debt. But, as the State has conceded, the classification here is not between convicted defendants and acquitted defendants. The distinction made with respect to the fee limitations is between convicted defendants represented by a public defender and all other indigent defendants, convicted and acquitted. For example, convicted defendants who were represented by a contract attorney, including those sent to prison, are not protected by the fee limitations and may be required to make restitution for the full charge of the contract attorney. Thus, the fact that a convicted defendant represented by a public defender *may* be sent to prison does not rationally explain why convicted defendants (some of whom may be in prison) represented by a contract attorney and all acquitted defendants are treated less favorably than convicted defendants represented by a public defender. Simply put, imprisonment is not a distinction that differentiates the two classes. *See Mann*, 602 N.W.2d at 792 ("A classification is reasonable if it is ' "based upon some apparent difference in situation or circumstances of the subjects placed within one class or the other which establishes the necessity or propriety

of distinction between them." ' " (quoting *Chicago Title Ins. Co.*, 256 N.W.2d at 29)).

Finally, pointing to all the safeguards built into the system for protecting an indigent defendant from being charged an excessive fee for his representation, the State concludes that just because some indigent defendants end up with a larger, more realistic charge for their legal representation is not a denial of equal protection because "practical problems of government permit rough accommodations." The flaw in this argument, however, is the State's failure to identify a "practical problem" that requires the State to cap the potential repayment obligation of one class of indigent defendants, but not the repayment obligation of all other indigent defendants. As noted above, any difficulty in ascertaining the full cost of the public defender is not really a practical problem because it is accomplished for purposes of calculating the recoupment obligation of acquitted defendants represented by a public defender.

We conclude there is no rational basis to deny acquitted defendants the benefit of the fee limitations afforded convicted defendants represented by the public defender. Therefore, it is a violation of Dudley's right to equal protection of the law to enter a cost judgment against him in excess of the $1000 fee limitation.

Having determined this constitutional challenge has merit, we must next decide whether counsel rendered ineffective assistance in failing to challenge the differing treatment of indigent defendants with respect to recoverable attorney fees. We conclude as a matter of law counsel failed to exercise reasonable diligence by not raising an issue that was clearly worth asserting. There is no reasonable strategy that could account for counsel's failure to alert the district court to the absence of a rational basis for the differential treatment between

convicted defendants represented by a public defender and all other indigent defendants. *See State v. Graves*, 668 N.W.2d 860, 870 (Iowa 2003) ("If there is no possibility that trial counsel's failure to act can be attributed to reasonable trial strategy, then we can conclude the defendant has established that counsel failed to perform an essential duty.").

Finally, Dudley was clearly prejudiced. Had the judgment been challenged on the basis that the order discriminatorily required Dudley to pay attorney fees in excess of the statutory fee limitation, the district court would have been obliged to limit Dudley's repayment obligation to the same level as that of convicted defendants represented by a public defender. We conclude, therefore, that Dudley has proven this part of his claim of ineffective assistance of counsel. Upon remand, any cost judgment against him may not include attorney fees in excess of the $1000 fee limitation.

2. *Indigent acquitted defendants versus indigent convicted defendants.* Dudley's final equal-protection claim is that indigent defendants who are acquitted are treated less favorably than indigent defendants who are convicted because the latter (1) are required to pay the costs of legal assistance only if reasonably able to pay, and (2) the court has the option of ordering community service in lieu of payment. The State claims this classification scheme is "wholly noninvidious" and is further justified by the statutory protections available to acquitted defendants required to pay the costs of legal assistance, which are not available to convicted defendants required to make restitution for these sums.

We need not address the first aspect of this argument because we have already determined that imposing mandatory reimbursement

without regard to ability to pay infringes an indigent defendant's right to counsel. Therefore, we will only discuss whether the rights of acquitted indigent defendants to equal protection of the law is violated by allowing convicted defendants to discharge their restitution obligation through community service, while not providing acquitted defendants the same option.

As the statutory recoupment process now stands, an acquitted indigent defendant, like a convicted defendant, cannot be required to make reimbursement for the cost of legal assistance unless he has a reasonable ability to pay. In addition, acquitted defendants burdened with a civil cost judgment must be afforded the same protections as other civil judgment debtors. In contrast, convicted defendants are required to make restitution for the cost of legal assistance, an obligation that does not trigger the protections of our statutes governing execution on judgments. *See Teggatz v. Ringleb*, 610 N.W.2d 527, 531 (Iowa 2000) (stating "the amount recovered under the Iowa restitution statute is not treated as a civil judgment"); *see also* Iowa Code § 910.2 (requiring sentencing court to order restitution for the cost of defense if the defendant is able to pay). On the other hand, courts have the option of allowing convicted defendants to perform community service. Iowa Code § 910.2.

We think the practical distinctions between a civil judgment and a restitution order entered as part of a sentence adequately justify this difference in treatment. Because a convicted defendant's sentence is subject to some level of supervision by the criminal justice system, a mechanism exists to monitor a convicted defendant's performance of court-ordered community service. An acquitted defendant is not subject to supervision so monitoring performance of community service would be

problematic. We think this situation is one of those " 'practical problems of government [that] permit rough accommodations.' " *Mann,* 602 N.W.2d at 792 (quoting *State v. Hall,* 227 N.W.2d 192, 194 (Iowa 1975)).

**B. Inclusion of Court Reporter Fee.** Dudley criticizes his attorney for failing to object to the inclusion of a court reporter fee in his cost judgment. Iowa Code section 625.8(2) provides that "[t]he clerk of the district court shall tax as a court cost a fee of fifteen dollars per day for the services of a court reporter." The judgment entered against Dudley for the costs of his legal assistance included a fifteen-dollar court reporter fee. The statutory definition of "legal assistance" does not include court costs or court reporter fees. Iowa Code § 815.9(3)[6]; *see also id.* § 910.1(4) (including court costs in the definition of "restitution" required of a *convicted* defendant). Therefore, it was error for the court to include this fee in the cost judgment.

The State contends the failure of Dudley's counsel to object to the inclusion of this sum was not ineffective assistance, referring to the distinction between court costs and the costs of legal assistance as a "nuance." We disagree. The fifteen-dollar court reporter fee is always taxed as a court cost, and it is elementary that a winning party does not pay court costs. As an *acquitted* defendant, Dudley may have been liable for the costs of his defense, but certainly not for the court costs. This distinction is obvious, not subtle. Therefore, we think a reasonably competent practitioner would have objected to the inclusion of a court cost in Dudley's repayment obligation. Clearly, Dudley was prejudiced,

---

[6]Section 815.9(3) provides in pertinent part:

"*Legal assistance*" as used in this section shall include not only an appointed attorney, but also transcripts, witness fees, expenses, and any other goods or services required by law to be provided to an indigent person entitled to an appointed attorney.

as the cost judgment entered against him was fifteen dollars more than it should have been. Upon remand, the district court should not require Dudley to pay any court costs, including the court reporter fee.

### IX. Due Process.

Dudley claims his procedural due process rights under the United States and Iowa Constitutions were violated. *See* U.S. Const. amend. XIV; Iowa Const. art. I, § 9. Dudley makes no argument that we should employ a different analysis under the Iowa Constitution, so our discussion of his due-process argument applies to both his federal and state claims. *See State v. Fremont*, 749 N.W.2d 234, 236 (Iowa 2008) (using same analysis to interpret Iowa Constitution and Federal Constitution because neither party suggested the Iowa provision should be interpreted differently from its federal counterpart).

Procedural due process requires notice and an opportunity to be heard "at a meaningful time in a meaningful manner" prior to depriving an individual of life, liberty, or property. *Hernandez-Lopez*, 639 N.W.2d at 241. Dudley claims he was given inadequate notice of the requirement to reimburse the costs of his defense and no opportunity to be heard.

Dudley's notice claim focuses on the period before he was appointed counsel. He claims he should have been told prior to his acceptance of court-appointed counsel that he would be required to repay the costs of his defense. We conclude Dudley had notice of this responsibility because a defendant's repayment obligation was a matter of public record at the time counsel was appointed to represent him. *See* Iowa Code § 815.9(3) ("If a person is granted an appointed attorney, the person shall be required to reimburse the state for the total cost of legal assistance provided to the person."); *see also People v. Bramlett*, 455 N.E.2d 1092, 1094 (Ill. App. Ct. 1983) (holding recoupment statute itself

served as a form of notice), *superseded by statute on other grounds as stated in People v. Nunez*, 553 N.E.2d 1123, 1127 (Ill. App. Ct. 1990).

Dudley also complains that he was not provided a hearing prior to the court's November 22, 2005 order that he pay all costs of his legal assistance to the clerk of court no later than November 30, 2005, or judgment for those costs would be entered against him. On November 30, Dudley's attorney filed a motion for hearing on the legality of the order, requesting in the alterative a monthly payment plan. The court then stayed enforcement of its order and held a hearing at which Dudley introduced evidence with respect to his financial condition. After the hearing, the court entered an order overruling Dudley's constitutional challenges and entering judgment against him for the cost of his legal assistance. A separate payment plan was also ordered by the judge.

The State contends Dudley has no standing to make a due-process claim since he was provided a hearing. Although Dudley received a hearing, he claims it was not at a meaningful time, but only after the court ordered payment.

The nature of the court's initial order is somewhat difficult to understand because it "orders" Dudley "to pay" the costs of his legal assistance, yet contemplates that a "judgment" will be subsequently entered. In fact, a later "judgment" for the costs of legal assistance was entered against Dudley. The confusion arises because under both the order and the judgment, Dudley was required to pay the costs of his defense. Nonetheless, we believe the judge's first order was merely intended to alert Dudley to his payment obligation under section 815.9(4), which states an acquitted defendant must pay the costs of legal assistance within thirty days of dismissal, and was not intended to

constitute a judgment enforceable by execution. A judgment is defined under our rules of civil procedure as a "final adjudication of any of the rights of the parties in an action."[7] Iowa R. Civ. P. 1.951. Because the initial order contemplated the subsequent entry of a "judgment," we do not consider the initial order to be a final adjudication of Dudley's repayment obligation.[8] We analyze Dudley's due-process claim with this understanding of the court's action.

We think the hearing provided to Dudley satisfied due process. It occurred prior to final judgment being rendered against him, and he was allowed to present evidence and argument with respect to the amount of the judgment as well as any repayment plan. Therefore, the hearing afforded Dudley was "at a meaningful time" and was conducted "in a meaningful manner" as required by the Due Process Clause. *Hernandez-Lopez*, 639 N.W.2d at 241.

Even though Dudley was given the opportunity to be heard, he points out section 815.9 makes no provision for a hearing and so is unconstitutional on its face. *See Fitch*, 581 F. Supp. at 278 (holding recoupment statute unconstitutional because it did not provide for a hearing prior to entry of judgment). The State argues Dudley has no standing to make a facial challenge. "Whether litigants have standing does not depend on the legal merit of their claims, but rather whether, if the wrong alleged produces a legally cognizable injury, they are among those who have sustained it." *Citizens for Responsible Choices v. City of*

---

[7]We refer to the rules of *civil* procedure because these orders involve a civil liability. *See Sluyter*, 763 N.W.2d at 582.

[8]Due-process concerns will be minimized if, in the future, district courts simply notify the defendant of his repayment obligation and refrain from ordering him to pay the costs of his legal assistance until the thirty days required by statute for entry of a judgment have passed. *See generally* Iowa Code § 815.9(4), (9).

*Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004); *accord State v. Hunter*, 550 N.W.2d 460, 463 (Iowa 1996) ("If a statute is constitutional as applied to the defendant, the defendant lacks standing to make a facial challenge unless a recognized exception applies."), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306, 312 (Iowa 2000). [9] Even though section 815.9 allows entry of a cost judgment without a hearing, Dudley has not suffered that harm. Therefore, he has no standing to challenge the statute on its face.

**X. Disposition.**

The imposition of a mandatory reimbursement obligation on acquitted defendants without any consideration of their ability to pay infringes on their right to counsel. Because a determination of Dudley's reasonable ability to pay the costs of his legal assistance was not made here, we reverse the judgment entered against Dudley and remand for further proceedings consistent with this opinion. Upon remand, any repayment ordered by the court shall limit attorney fees to the statutory fee for cases of this type, shall not include statutory court reporter fees, and shall not require payments that would deprive Dudley of the protections accorded other civil judgment debtors.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; AND CASE REMANDED.**

All justices concur except Baker, J., who takes no part.

---

[9]A recognized exception is when First Amendment rights are implicated. *Hunter,* 550 N.W.2d at 463. That exception is not applicable here.