## IN THE COURT OF APPEALS OF IOWA

No. 14-1512
Filed October 14, 2015

IN THE MATTER OF D.B.,
ALLEGED TO BE SERIOUSLY MENTALLY IMPAIRED,

D.B.,
　　　Respondent-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Cynthia J. Danielson, Judge.

D.B. appeals the district court's order involuntarily committing him to a treatment facility following its finding D.B. suffered serious mental impairment. **AFFIRMED.**

William C. Glass, Keosauqua, for appellant.

Thomas J. Miller, Attorney General, Gretchen Witte Kraemer, Assistant Attorney General, and Amy K. Beavers, County Attorney, for appellee State.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

D.B. appeals the district court's order involuntarily committing him to a treatment facility following its finding D.B. suffered serious mental impairment.

## I. Factual and Procedural Background

D.B. was found to be seriously mentally impaired on September 20, 2011.[1] He was diagnosed as paranoid schizophrenic. He was committed to inpatient treatment on the day of his adjudication and again on several occasions when he failed to comply with his outpatient treatment requirements.

On August 18, 2014, D.B.'s social worker and doctor filed a report with the Des Moines County Clerk of Court pursuant to Iowa Code section 229.15(2) (2013) requesting D.B.'s return to inpatient treatment. The letter stated:

> [D.B.] has a chronic and persistent mental illness. His condition appears to be deteriorating. He has recently begun [to] act more on apparently delusional beliefs; according to his mother, he believes people are breaking into his home and poisoning his food; she says he is doing things like installing alarms, video cameras at his home, and he was recently arrested for public nuisance charges involving this kind of behavior.
> [D.B.] has not been able to abide by a behavioral contract. He reported to Sgt. Zahn, Burlington Police: "I'm afraid I'll snap." Additionally, his mother says he recently hit her and broke her glasses.
> [D.B.] did not keep his last [two] out[patient] appointments. He is not responding to our efforts to communicate w[ith] him.
> [D.B.] does not have the insight and/or awareness re[garding] his illness and for all of these reasons, we feel he is a potential danger to himself and/or others at this time.

The same day, the district court issued an order for immediate custody, for evaluation, and for hearing. It scheduled the hearing on the matter to take place

---

[1] D.B. appealed the adjudication, and this court affirmed. *See In re D.B.*, No. 11-1836, 2013 WL 2145767, at *2–3 (Iowa Ct. App. May 15, 2013).

on August 26, 2014. D.B. was taken into immediate custody and admitted to University of Iowa Hospitals and Clinics (UIHC).

On August 26, D.B. appeared for the hearing with his appointed counsel, Alan Waples. D.B. interjected before Waples was able to address the court and demanded Waples not be permitted to represent him. The district court asked D.B. if he was requesting a continuance in order to find new counsel. D.B. did so request, and a continuance was granted until September 9, 2014. Waples was to remain D.B.'s appointed counsel until new counsel filed an appearance.

On September 8, D.B. refused to be transported for the hearing the next morning. He instead appeared by telephone on September 9. He had not retained a new attorney.[2] As a result, Waples appeared at the hearing. Once again, D.B. interjected before Waples could address the court. He adamantly insisted Waples not be permitted to advocate on his behalf. He accused Waples of "fraud" and of being involved in a "scandal," affecting D.B.'s treatment options. The hearing proceeded with D.B. conducting all cross examination and presenting his own testimony and the direct examination of his witness. The transcript of the hearing shows Waples was not able to make even a single statement on the record without interruption and objection by D.B.

A doctor from UIHC testified at the hearing. He explained D.B. had been diagnosed with paranoid schizophrenia, though an unspecified psychotic disorder may have been a more appropriate diagnosis. He testified D.B. had been refusing medication while at UIHC, had become more tangential, and had

---

[2] D.B. claimed he had found an attorney to take his case. However, he stated he had not paid the attorney's retainer. No attorney had filed an appearance with the court.

displayed paranoid delusions. He stated he believed "that if [D.B.] were to be released or provided no treatment at this time that he would be a danger to himself or others."

Following the doctor's testimony the court accepted into evidence a report written by the doctor that described D.B. as "violent" and stated, "[D.B.] has had several problems with his family and the police due to his psychosis and personality vulnerabilities. . . . [He] has assaulted others in the past including medical personnel and has a long history of arrests and legal action." The report notes three convictions for disorderly conduct since 2009.

D.B. testified on his own behalf. He claimed the medication his doctors wished to administer was poison. He attempted to call two witnesses, both fellow patients at UIHC. One of those witnesses testified. The content of the witness's testimony established he had never seen D.B. yell at, disobey, or act rudely towards the UIHC staff. The other witness was not available during D.B.'s presentation of evidence, and the hearing concluded without that witness's testimony.

Following the hearing, the court ordered D.B.'s placement with UIHC remain in force and further ordered "a complete psychiatric evaluation and appropriate treatment."

D.B. appeals,[3] asking this court to find "there was insufficient evidence to support his continued hospitalization" and his "trial counsel was ineffective" for

---

[3] D.B.'s request for relief asks this court to "release him from inpatient hospitalization." D.B. has already been released by the district court's order dated June 25, 2015. We nevertheless decline to dismiss the appeal as moot. Our supreme court has held "a party who has been adjudicated seriously mentally impaired and involuntarily committed

failing to call his second witness and for failing to object to the untimeliness of the August 26, 2014 hearing.[4]

## II. Standard of Review

"We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *B.B.*, 826 N.W.2d at 428. "The district court's findings of fact are binding upon this court if supported by substantial evidence." *In re B.T.G.*, 784 N.W.2d 792, 796 (Iowa Ct. App. 2010). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.* Clear and convincing evidence "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *B.B.*, 826 N.W.2d at 428.

We review ineffective-assistance-of-counsel claims de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

## III. Discussion

D.B. first claims the district court's order was not supported by substantial evidence. The district court's order was proper only if the court "[found] by clear and convincing evidence that the respondent has a serious mental impairment."

is presumed to suffer collateral consequences justifying appellate review" even if he has already been released—an exception to our mootness doctrine. *See In re B.B.*, 826 N.W.2d 425, 429–30 (Iowa 2013) (noting one such collateral consequence is the "potential to use one's involuntary commitment as evidence in future proceedings").

[4] The district court ordered immediate custody as provided by Iowa Code section 229.11, which requires "[a] hospitalization hearing shall be held no more than five days after the date of the order, except that if the fifth day after the date of the order is a Saturday, Sunday, or a holiday, the hearing may be held on the next succeeding business day." The immediate custody order was entered on Monday, August 18, 2014. Under section 229.11, the hospitalization hearing could occur no later than Monday, August 25. However, the district court first scheduled the hearing for Tuesday, August 26.

Iowa Code § 229.13(1). The district court relied upon the statutory definition of "serious mental impairment," which:

> describes the condition of a person with mental illness[5] and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness . . . [i]s likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

*Id.* § 229.1(17).

D.B. first challenges the district court's finding that he "lacks judgment to make a responsible decision regarding his hospitalization or treatment." We find there is substantial evidence to support the district court's conclusion. The record shows both before and during his hospitalization, D.B. refused to follow his doctors' treatment recommendations or medication regimen. In refusing his medication, D.B. was susceptible to the paranoid delusions observed by his two doctors.

D.B. next challenges the district court's finding that "he is likely to physically injure himself or others." "The threat the patient poses to himself or other must be evidenced by a recent overt act, attempt or threat." *B.T.G.*, 784 N.W.2d at 798. We find there is substantial evidence in the record of such overt acts, supporting the district court's finding.

The August 18, 2014 report from D.B.'s doctor and social worker indicates his behavior deteriorated while he resided outside a treatment center and refused to follow his medication regimen. The report describes an incident in which D.B. allegedly struck his mother. The August 27, 2014 report admitted into evidence

---

[5] D.B. does not contest the finding he suffers from a mental illness. His diagnosis is well-documented throughout the record.

at the September hearing notes D.B.'s "non-compliance with med[ication]" and that he is "violent." The report asserts D.B. threatened that "these piece of shit doctors are gonna fucking pay for this." It also refers to several criminal charges from recent years involving D.B.'s violent behavior. These facts taken together—particularly the evidence of the overt acts of D.B. striking his mother and threatening his doctors—constitute substantial evidence to support the district court's finding, contrary to D.B.'s assertion on appeal that "no evidence in the record [shows] that he was a danger to himself or others."

The district court's findings of fact are supported by substantial evidence, and we therefore affirm the district court's order.

D.B. next claims Waples rendered ineffective assistance.[6] "To prevail on a claim of ineffective assistance of counsel, a claimant must . . . [show] (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012) (citations and internal quotation marks omitted). Both elements must be shown by a preponderance of the evidence, and an ineffective-assistance claim may be disposed of if either element is lacking. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). "[W]e begin with the presumption that the attorney performed competently." *Id.* "We scrutinize each claim in light of the totality of the circumstances." *Id.*

---

[6] It is not definitively established that the right to effective assistance of counsel is implicated in chapter 229 proceedings. *See In re J.H.*, No. 12-1133, 2013 WL 1760183, at *2–3 (Iowa Ct. App. Apr. 24, 2013) (citing *In re Detention of Crane*, 704 N.W.2d 437, 438–39 n. 3 (Iowa 2005); *In re Detention of Willis*, 691 N.W.2d 726, 730 (Iowa 2005)). In consideration of our ultimate conclusion on the merits of D.B.'s ineffective-assistance claims, we "assume the right to effective assistance of counsel exists under chapter 229 for the purposes of this appeal." *See id.* at *3.

With these principles in mind, we conclude D.B. cannot prevail on his claim Waples failed to perform an essential duty when D.B. himself prevented Waples from performing those duties. D.B. immediately and aggressively interjected his refusal to accept Waples's representation at the beginning of the first scheduled hearing on August 26; counsel was cut off and given no opportunity to object to any procedural defect. The same is true for the September 9 hearing, when D.B. demanded the court not permit Waples to advocate on his behalf. D.B. therefore cannot "show [Waples's] performance fell outside the normal range of competency." *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009). No attorney—no matter how skillful—could have done more for D.B. than Waples because counsel was never given the opportunity to assert a claim or make an argument. The court, at D.B.'s insistence, conducted the hearings without giving counsel an opportunity to speak.

D.B. has not overcome our presumption that Waples acted competently in light of the totality of the circumstances, and we therefore reject his ineffective-assistance claims.

## IV. Conclusion

The record contains substantial evidence supporting the district court's findings. D.B. has not established his appointed counsel was ineffective in light of the circumstances of this case. We affirm.

**AFFIRMED.**